OPINION. Muukonet, Judge: Petitioner, to qualify as an organization exempt from the Federal income tax under section 101 (6) of the 1939 Internal Kevenue Code, must meet three tests: (1) It must be organized and operated “exclusively” for religious purposes; (2) its “net income” must not inure in whole or in part to the benefit of private shareholders or individuals; and (3) it must not devote any substantial part of its activities to an attempt to influence legislation by propaganda or otherwise. Kegs. Ill, sec. 29.101 (6) — 1. Respondr ent contends that the petitioner does not meet either of the first two tests given above and therefore is not exempt under section 101 (6). At the outset it is well to note the statute grants the exemption to a religious corporation. If the corporation is not of a religious character it is unnecessary to consider the remaining qualifications. Here the Commissioner does not argue the petitioner fails in the primary attribute of being a religious organization. It is somewhat significant also that respondent’s revocation of petitioner’s exemption was not on the ground that petitioner lacked the necessary religious character. Petitioner was organized and has been operating during the years 1942 through 1950 for the purpose of propagating the teachings of the “I AM” Religious Activity. Members and students of this Religious Activity seek to pattern their lives after certain “revelations.” These “revelations” lay down precepts which promise ultimate salvation to those who practice them. Classes are conducted throughout the United States, and local sanctuaries are established in various cities, here and. abroad, to pursue this faith. We do not believe it is necessary here to repeat in detail the nature and content of the teachings propagated by the petitioner. Nor are we compelled to decide whether the objectives of the petitioner are worthy or desirable. Our only concern is to decide whether the petitioner in this case comes within the specific statutory provisions relating to it. Estate of Anita McCormick Blaine, 22 T. C. 1195. In the early case of Unity School of Christianity, 4 B. T. A. 61, 70, we said: Religion is not confined to a sect or a ritual. The symbols of religion to one are anathema to another. What one may regard as charity another may scorn as foolish waste. And even education is today not free from divergence of view as to its validity. Congress left open the door of tax exemption to all corporations meeting the test, the restriction being not as to the species of religion, charity, science or education under which they might operate, but as to the use of its profits and the exclusive purpose of its existence. We think the evidence and testimony of the witnesses establish that the petitioner is an organization organized exclusively for religious purposes within the meaning of section 101 (6). Respondent points out that petitioner received income from the sale of religious publications to students and members of the religious following and, in addition, received income in the form of fees in connection with certain annual conclaves, and respondent urges that these income-producing activities show that the petitioner was not “operated exclusively” for religious purposes. The sale of religious literature and the conclaves held to propagate the precepts of the petitioner are activities closely associated with, and incidental to, the religious purposes of the petitioner. Such activities bear an intimate relationship to the proper functioning of the petitioner, and we do not believe that income received from these activities prevents the petitioner from being an organization organized and operated “exclusively” for religious purposes within the meaning of section 101 (6). Squire v. Students Book Corp., 191 F. 2d 1018; Trinidad v. Sagrada Orden de Predicadores, 263 U. S. 578. Respondent’s argument, however, focuses more intently on the contention that a part of petitioner’s net income inured to .the benefit of Edna W. Ballard, her son, Donald, and to other members of petitioner’s staff, and that consequently petitioner cannot qualify for exemption under section 101 (6) even if we decide that the petitioner was organized “exclusively” for religious purposes. Respondent calls attention to the expenses averaging $7,798.50 a year over the period here involved, for hotel accommodations and meals paid by the petitioner for Edna W. Ballard and the rest of the staff while on tour; to the rental income received from the petitioner by Edna W. Ballard of $1,500 in 1942, $1,500 in 1943, and $1,125 in 1944 for the use of her house in Chicago by staff members of the petitioner; personal living expenses paid by the petitioner for the staff members between tours; payments of from, approximately, $2,500 to $5,500 per year over the period involved here for the upkeep and repair of the house in Chicago belonging to Edna W. Ballard and used exclusively by members of petitioner’s staff; personal living expenses of Donald Ballard, son of Edna W. Ballard, paid by the petitioner in 1942 and 1943, and living quarters, with a fair market value of $65 per month, supplied Donald by the petitioner during the years 1946 through 1950. We cannot agree with the respondent that expenses of this nature paid by the petitioner result in channeling a part of petitioner’s net income to the benefit of private shareholders or individuals. Under section 101 (6) of the 1939 Internal Revenue Code, the test is that “no part of the net earnings * * * inures to the benefit of any private shareholder or individual.” Respondent in this case, for the years involved, has allowed to the petitioner as deductions practically all the expenditures mentioned here in arriving at the net earnings for those years, and in our findings we have indicated the net earnings of the petitioner, with such deductions allowed, for the years in question. There is no question about the propriety of allowing these expenditures as deductions, and respondent does not contend that a section 101 (6) organization cannot incur ordinary and necessary expenditures in its regular activities without losing its exempt status under section 101 (6). See Edward Orton, Jr. Ceramic Foundation, 9 T. C. 533, affd. 173 F. 2d 483. Eegular salaries were not paid to the petitioner’s staff members who devoted all their time to the propagation of the “I AM” ideas. Instead, the petitioner met all their personal living expenses, which we find to be reasonable in every respect. Cf. Mabee Petroleum Corp. v. United States, 203 F. 2d 872. Repairs and upkeep on the house in Chicago where staff members lived between tours are, similarly, ordinary and necessary expenditures made by the petitioner in conducting its activities. Edna W. Ballard, after 1944, received no rent from petitioner-for the use of this house in Chicago by the staff members. Consequently, none of the expenses thus paid by the petitioner formed any part of its net earnings in the years involved here. We hold that no part of the petitioner’s net earnings inured to any private shareholders or individuals in the years 1942 through 1950 within the meaning of section 101 (6) of the 1939 Code. Forest Lawn Memorial Park Association, Inc., 45 B. T. A. 1091. Respondent also makes much of certain amounts, in the form of cash and property, received by Edna W. Ballard from various students of the “I AM” Religious Activity over the years involved here. However, the petitioner has shown convincingly, through the testimony of the auditor and that of Edna W. Ballard, as well as other items of evidence, that these receipts by Edna W. Ballard were in fact made to her individually and were never at any time includible in the income of the petitioner. Any expenditures by Edna W. Ballard from these funds, including the purchases made by her for her son, Donald, can have no bearing upon petitioner since such expenditures did not come out of its income. During the years 1942 through 1949, legal fees of more than $112,-000 were paid by members of a group organized among sympathizers of the “I AM” Religious Activity for the defense of Edna and Donald Ballard in certain criminal proceedings involving mail fraud. But there is no reason to attribute this amount to the petitioner. These funds were never a part of petitioner’s income, and we do not see how their expenditure can affect the petitioner. Surety bond premiums of $375 were paid for Edna and Donald Ballard in connection with the criminal proceedings, and legal fees and costs of $7,507.60 in 1948 and $1,150 in 1949 were paid in their defense. Respondent argues that these amounts were paid by the petitioner, but we are convinced from all the evidence that these amounts were paid by the group organized to handle the defense of the Ballards. Therefore, it cannot be said that any part of the net earnings inured to private shareholders or individuals on account of such expenditures made in defending the Ballards in the criminal proceedings. Again, in the case of various amounts paid in 1948, 1949, and 1950 by various students of the “I AM” Keligious Activity to meet additional Federal income taxes assessed against Edna and Guy Ballard for the years 1988 through 1941, there is no ground for attributing these amounts to the petitioner. These funds used to meet back taxes were never a part of petitioner’s income, and their use cannot affect the disposition of this case. It is true, as respondent indicates, that Edna W. Ballard and Betty O. Mundy, as two of the three members of the board of directors, were in control of the activities of the petitioner both in matters of religious instruction and in financial matters. We do not see the significance of this, however, where such control, by the majority of the board of directors, is exercised to carry out the avowed religious purposes of the petitioner and where such control is not employed, so far as the evidence and the record as a whole reveal, to channel net earnings of the petitioner to private shareholders or individuals. Edna W. Ballard, apart from the two houses she owned prior to the years before us and apart from certain bequests received from “I AM” students, accumulated no property during the years 1942 through 1950. Gifts made to her personally were often expended to meet expenses of the petitioner, and, in fact, at the end of the period here involved the balance in Edna W. Ballard’s “love gift” account, kept on petitioner’s books, was transferred to the petitioner as an outright gift. Nor did the other two directors of petitioner acquire any property out of petitioner’s net earnings during the years before us. We hold that the petitioner, during the years 1942 through 1950, met the requirements for exemption from taxation within the meaning of section 101 (6) of the 1939 Internal Revenue Code in that it was an organization organized and operated exclusively for religious purposes and no part of its net earnings during those years inured to the benefit of any private shareholder or individual. Our holding on this principal issue in favor of the petitioner makes it unnecessary for us to consider the alternative issues presented. Decision will be entered for the petitioner.