GREATER UNITED NAVAJO DEVELOPMENT ENTERPRISES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 378–79X.     Filed April 16, 1980.

*Albert R. Vermeire,* for the petitioner.
*Barry D. Lederman,* for the respondent.

RAUM, *Judge:* The Commissioner has ruled that petitioner does not qualify for exemption from income taxation under section 501(c)(3), I.R.C. 1954. Petitioner invokes the jurisdiction of this Court pursuant to section 7428 to obtain a declaratory judgment as to its exempt status.[1] The question presented is whether petitioner is organized and operated exclusively for charitable purposes within the meaning of section 501(c)(3), I.R.C. 1954.

### FINDINGS OF FACT

This case was submitted on the basis of the stipulated administrative record, which is hereby incorporated in these findings by reference. Pursuant to Rule 217(b), Tax Court Rules of Practice and Procedure, the factual representations contained in the administrative record must be assumed to be true.

Petitioner Greater United Navajo Development Enterprises,[2] Inc., is a public service nonprofit corporation organized under the laws of Arizona on June 20, 1972. Its principal place of business is Fort Defiance, Ariz. Petitioner also "controls" an affiliated or "subsidiary" corporation, Greater United Navajo Construction Co., Inc. (GUNCO), by virtue of the fact that the two corporations have the same officers, directors, and staff. GUNCO was incorporated to operate as a public service nonprofit corporation under the laws of Arizona on November 19, 1973.

---

[1] The statutory requirements for invocation of this Court's declaratory judgment jurisdiction have been satisfied: petitioner is the organization whose exempt status is in issue, petitioner has exhausted its administrative remedies, and this action was timely filed. Sec. 7428(b), I.R.C. 1954. See Rule 210(c), Tax Court Rules of Practice and Procedure.

[2] Although the word "Enterprises" appears in the plural as part of petitioner's name in the pleadings and briefs of the parties as well as in various other documents, it appears in the singular as "Enterprise" in its articles of incorporation.

An application for recognition of exemption under section 501(c)(3) on behalf of petitioner and GUNCO was filed on September 29, 1977. A final adverse ruling on that application was issued on October 11, 1978, and the present litigation ensued.

Petitioner's articles of incorporation, as amended on January 5, 1973, state that its incorporators have associated themselves together "for the purpose of forming a non-profit 501(c)(3) tax-exempt community economic development corporation without capital stock." The articles further provide that petitioner is organized for the following purposes:

To operate exclusively for charitable and educational purposes, including but not limited to, improvement of the condition of the Navajo Nation poor as is more specifically set forth hereinafter.

To organize, exist and function as a charitable, non-profit, tax-exempt 501(c)(3) organization and to qualify, if possible, as a code section 509(a)(1) non-private foundation, an organization described in Section 170(b)(1)(A) of the Internal Revenue Code as a "publicly supported charitable organization".

To further economic development among the Navajo Nation poor, and to promote, encourage and assist the growth and development of business concerns within the Navajo Nation, including but not limited to small business concerns.

To engage in the business of establishing business opportunities and operating said businesses and projects in order to create employment opportunities for residents of the Navajo Reservation, and to stimulate and add to the flow of private equity capital and long-term loan funds for small business enterprises located within the Navajo Nation.

In addition, the articles further provide that "specific and primary" purposes of petitioner are "To raise the economic, welfare, educational and social levels of the Navajo Nation poor, which have substantial unemployment and low-income families, to foster and promote national interest and concern for the problems of said Navajo Tribe to the end that (A) prejudice and discrimination, economic and otherwise, may be eliminated; (B) sickness and proverty [sic] may be lessened; and (C) educational opportunities may be expanded among the members of such Tribe." The articles specify that these purposes are to be accomplished by the following activities to benefit the Navajo Nation poor: expanding opportunities for Navajo ownership of and employment in small businesses; assistance to poor Navajo property owners in the development of their property; encouraging development of local businesses which employ, train, and educate residents of economically depressed areas of the Navajo

Reservation; aiding underprivileged Navajos in developing management skills and obtaining business financing, although no direct financial assistance in the form of guarantees, investments, or loans is to be provided unless financing is unavailable from conventional sources; and assisting by contributions or otherwise the operation of charitable entities organized to carry on activities similar to those of petitioner. To further its charitable purposes, petitioner's articles authorize it to provide management or technical advice and financial support to Navajo business, to conduct research and educational programs, and operate small businesses that provide employment to Navajos and that advance economic development of the Navajo Nation.

GUNCO's articles of incorporation provide that the corporation is to engage in the construction business and is to exercise all lawful corporate powers necessary to further this business or any other business the corporation enters. GUNCO is also empowered "to take such actions * * * as may be beneficial to any community, state or country in which the Corporation has * * * business interests or investments." The articles further provide that all its stock is to be issued to a corporation or corporations qualifying for exemption under section 501(c), I.R.C. 1954. With the exception of these latter provisions, GUNCO's articles of incorporation otherwise contain no provisions which indicate that GUNCO is organized differently from an ordinary business corporation.

Petitioner characterizes GUNCO as a wholly owned subsidiary, although GUNCO has in fact never issued any stock. GUNCO was established as a separate corporation in order to satisfy the criterion for receipt of training and technical assistance funds from the Office of Native American Programs, a Federal agency now a part of the Office of Human Development in the Department of Health, Education, and Welfare. Petitioner's application for exemption applied for a "group exemption" for itself and GUNCO and the activities of both entities are difficult to separate. The Government has been content to accept petitioner's treatment of GUNCO as its wholly owned subsidiary and has attached no particular importance to the independent corporate existence of GUNCO. Accordingly, for purposes of this opinion, the activities of petitioner will be considered to include the activities of GUNCO.

Petitioner's exemption application indicates that it engages in a wide range of activities. The beneficiaries of petitioner's activities are limited to Navajo Reservation residents. Petitioner's application for exemption represents that it contributes to charitable organizations and the Navajo School of Medicine,[3] grants educational scholarships,[4] and assists athletic events. The petitioner also assists small businesses and provides employment opportunities and job training to Indians. In cooperation with its subsidiary, GUNCO, petitioner constructs Government-subsidized low-cost housing for the poor and other facilities on the Navajo Reservation. Construction operations by petitioner and its subsidiary have produced 96 homes; a 10,000-square-foot annex to the Navajo Arts and Crafts Building, Window Rock, Ariz.; a 50-unit mobile home park and two athletic fields for the Navajo Community College; and extensive renovations to the Lupton Chapter Rodeo Grounds. Petitioner and GUNCO also supplied concrete to the Navajo Housing and Development Enterprise for its use in constructing 25 homes.

In addition to the construction business, petitioner engages in a number of ostensibly commercial activities. Petitioner at some time received from the Government a quantity of surplus oil drilling and mining equipment, as well as several large trucks and trailers, and expended some $286,519 to place such equipment in usable condition. Various entities lease the equipment for a fee. The oil and gas drilling equipment is leased in the first instance to Madar, Inc., a private New Mexico corporation, which in turn leases the equipment to other businesses not on the Navajo Reservation. Madar receives a management fee based on the gross rental income obtained from the lease of the equipment, and is responsible for storing, operating, and maintaining the equipment. Petitioner reimburses Madar for the equipment maintenance and operation costs, and also pays for insurance. The trucks and trailers and other miscellaneous items are leased to other enterprises. At various times since its

---

[3] The record shows only a contribution of $500 for this purpose.

[4] In response to an IRS inquiry as to all educational scholarships for the preceding 3 years, petitioner revealed merely a payment of $786 to Arizona State University for a student named Shari Atcitty. The surname of that student is the same as that of petitioner's president and chairman of the board. The record fails to disclose whether they are related. However, the Government has not made any argument in respect of this matter.

organization, petitioner has also leased school buses and automobiles, provided garbage collection services, operated a service station and garage, and a concrete and cement batch plant. The businesses referred to in the preceding sentence have since been discontinued or phased out. Petitioner appears to have engaged in its business operations with the objective of making petitioner a self-supporting operation through "the establishment of highly profitable businesses," as opposed to "maximum utilization" of the Navajo labor force.

Petitioner's sources of funding are the business operations it conducts and Government grants. As of the date of the application for recognition of exemption, petitioner had received a total of $1,063,000 in Federal grants.[5] Petitioner's receipts have declined since the close of its fiscal year ending August 31, 1974. In that year, petitioner had total receipts of $1,476,795.08, including receipts of $593,114.10 from "services," and net income in the amount of $263,665.48. GUNCO in the same fiscal year had a net loss of $217,404.94. In the following fiscal year (ending August 31, 1975), petitioner received the following gross income:

| | |
|---|---:|
| Completed construction projects | $176,440 |
| Sale of equipment | 143,050 |
| Lease of equipment | 353,120 |
| Service center | 43,907 |
| Concrete division | 67,961 |
| Sanitation division | 69,833 |
| Madar Corp | 17,357 |
| Total income | 871,668 |

No grants were received in that year, and petitioner ended the year with a net loss of $37,619. GUNCO had net income of $59,390 for a period from September 1, 1974, to October 31, 1975.[6]

---

[5]Petitioner's exemption application indicates that these grants were received in its "taxable year" 1974. However, the financial statements included in the record for petitioner and GUNCO show only $934,000 Federal grant revenue for the fiscal year ended Aug. 31, 1974, which presumably was its "taxable year." The discrepancy is unexplained.

[6]The Oct. 31 date appears in a financial statement identified as exhibit 32–AF in the record. The possibility that this may be in error and that the correct date should be Aug. 31 is suggested by GUNCO's financial statement for the preceding fiscal year ended Aug. 31, 1974, and by the consolidated financial statements of petitioner and GUNCO for the fiscal years ended Aug. 31, 1976 and 1977, as indicated in the next paragraph of the text above.

For the fiscal years ended August 31, 1976 and 1977, consolidated financial statements for petitioner and GUNCO are in the record. For the year ended August 31, 1976, the following results of operations were shown:

Income:

| | |
|---|---:|
| Madar, Inc | $45,280.07 |
| Construction | 11,750.00 |
| Equipment leasing | 12,351.91 |
| Service center | 696.49 |
| Concrete | 481.00 |
| Sale of assets | 10,601.23 |
| Other miscellaneous receipts | 28,364.99 |
| Total income | $109,525.69 |
| Total expenses | 136,205.93 |
| Net loss | (26,680.24) |

For the year ended August 31, 1977, the financial statements reported the following consolidated results from operations:

Income:

| | |
|---|---:|
| Madar, Inc | $193,600.73 |
| Leasing | 7,725.39 |
| Service center | 174.50 |
| Concrete | 7,393.38 |
| Sale of asset | 700.00 |
| Miscellaneous | 1,735.00 |
| Gross income | $211,329.00 |
| Total expenses | 203,090.51 |
| Net income | 8,238.49 |

The bulk of petitioner's expenditures appear to be general and administrative expenses or related to the operation of petitioner's "commercial" enterprises. However, petitioner reports that in the 3 years prior to January 1978, it made contributions totaling $500 to the Navajo School of Medicine. (See n. 3 *supra.*) A scholarship of $786 was also granted to a Navajo student attending Arizona State University. (See n. 4 *supra.*) Petitioner also transferred 100 school buses to the Office of Navajo Economic Opportunity for use in child development programs. It estimated that its equity in these buses was $200,000. Three small businessmen received wages from petitioner in an unspecified amount under petitioner's program to aid small businesses.

Also, in 1973 and 1974, petitioner engaged in job training activities. In these years, the record shows that petitioner received reimbursement from Federal and State agencies for the training of eight truck drivers, two inventory clerks, one stock clerk, one welder, and one auto mechanic. Although the amounts reported on petitioner's financial statements as general and administrative expenses and as expenses of operations could also have included expenditures for aid to small businesses, job training, or other forms of community development aid, the record is devoid of evidence which would permit the making of an allocation of expenditures to these purposes.

## OPINION

An organization may qualify for exemption from Federal income taxation under sections 501(a) and 501(c)(3), I.R.C. 1954, if three conditions are satisfied: (1) It must be both "organized" and "operated" exclusively for exempt purposes; (2) no part of its net earnings may inure to the benefit of shareholders or other individuals; and (3) no substantial part of its activities may be political or lobbying activities.[7] *Baltimore Regional Joint Board Health and Welfare Fund v. Commissioner*, 69 T.C. 554, 556–557 (1978). See *Saint Germain Foundation v. Commissioner*, 26 T.C. 648, 657 (1956). The Commissioner has determined that petitioner is neither organized nor operated for charitable or educational purposes, and petitioner has the burden of showing that this determination is incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 492 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. Since we have concluded

---

[7] SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\* \* \* \* \* \* \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \* \*

(3) Corporations * * * organized and operated exclusively for * * * charitable * * * or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

that petitioner has failed to establish, on the basis of the administrative record, that it is "operated" exclusively for charitable or educational purposes, we need not consider whether petitioner is "organized" exclusively for exempt purposes.

The Government argues, insofar as the "operational test" is concerned, that petitioner conducts business activities, construction and equipment-leasing, and operates these businesses in a manner indistinguishable from commercial enterprises. The Government contends that these commercial activities, as well as the business activities discontinued by petitioner, evidence a nonexempt purpose of such magnitude that petitioner is not operated "exclusively" for charitable or educational purposes. Petitioner contends that its on-reservation business activities, its construction business and some equipment leasing, are carried on solely for exempt purposes, the training and employment of the Navajo Nation poor. As to its off-reservation business, the oil well drilling equipment leasing business conducted through Madar, Inc., petitioner argues that although profit is pursued, the profits from the business are used for charitable purposes, and that the business is therefore not conducted for a nonexempt purpose. Petitioner further argues that operation of the off-reservation business is only an insubstantial part of its activities, and that its exempt status should therefore be unaffected by such business activity.

In order to determine whether an organization is operated "exclusively" for exempt purposes, thus satisfying the so-called "operational test," we must first examine the organization's activities. The objective of this examination is to ascertain the purpose for the activities, for it is the purpose toward which the organization's activities are directed, and not the nature of the activities themselves, which is determinative under the operational test. *Federation Pharmacy Services, Inc. v. Commissioner*, 72 T.C. 687, 691 (1979), on appeal (8th Cir., Oct. 15, 1979); *est of Hawaii, Inc. v. Commissioner*, 71 T.C. 1067, 1078–1079 (1979), on appeal (9th Cir., June 1, 1979); *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 356–357 (1978); *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 728 (1964).

Although the word "exclusively" is used in the statute, it has not been given a strictly literal interpretation. Thus, the Treasury regulations make clear that an organization can satisfy the operational test if it engages *primarily* in activities directly

accomplishing an exempt purpose; some activity not serving an exempt purpose is permitted, but the organization's wholly nonexempt activities must be relatively insubstantial in comparison with the organization's activities serving an exempt purpose.[8] And judicial opinions in a long line of cases reflect the same approach. See, e.g., *Christian Manner International v. Commissioner*, 71 T.C. 661, 668 (1979); *Church in Boston v. Commissioner*, 71 T.C. 102, 107 (1978); *St. Louis Union Trust Co. v. United States*, 374 F.2d 427, 431–432 (8th Cir. 1967); *Parker v. Commissioner*, 365 F.2d 792, 796 (8th Cir. 1966), cert. denied 385 U.S. 1026 (1967); *People's Educational Camp Society, Inc. v. Commissioner*, 331 F.2d 923, 931 (2d Cir.), cert. denied 379 U.S. 839 (1964); *Seasongood v. Commissioner*, 227 F.2d 907, 910 (6th Cir. 1955); *Levy Family Tribe Foundation, Inc. v. Commissioner*, 69 T.C. 615, 617 (1978). Cf. *Fides Publishers Ass'n v. United States*, 263 F. Supp. 924, 934–935 (N.D. Ind. 1967). Accordingly, if we should find, as we do here, that petitioner's principal activities do not directly further any charitable or educational purpose, then it cannot qualify as an exempt organization, even though it is engaged in some charitable and educational work.

As we stated in *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. at 357, it is possible for one activity to be carried on for multiple purposes. Cf. *Better Business Bureau, Inc. v. United States*, 326 U.S. 279, 283–284 (1945). Therefore, even if all, or all but an insubstantial part, of an organization's activities in some manner further or accomplish exempt purposes, the organization must still establish that its primary purpose for engaging in these activities is an exempt purpose. Accordingly, as provided in the regulations,[9] if an organization engages in an activity which

---

[8]Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs., provides as follows:

"An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose."

[9]Sec. 1.501(c)(3)–1(e)(1), Income Tax Regs., provides as follows:

(e) *Organizations carrying on trade or business*—(1) *In general.* An organization may meet the requirements of section 501(c)(3) although it operates a trade or business as a substantial part of its activities, if the operation of such trade or business is in furtherance of the organization's exempt purpose or purposes and if the organization is not organized or operated for the primary purpose of carrying on an unrelated trade or business, as defined in section 513. In determining the existence or nonexistence of such primary purpose, all the circumstances must be considered, including the size and extent of the trade or business and the size and extent of the activities which are in furtherance of one or more exempt purposes. An

might be carried on as a trade or business in competition with commercial enterprises, the organization must prove that its primary objective in carrying on the activity is an exempt purpose, and not the production of profits. *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. at 357. See *Elisian Guild, Inc. v. United States*, 412 F.2d 121, 124 (1st Cir. 1969); *People's Educational Camp Society, Inc. v. Commissioner*, 331 F.2d at 932; *American Institute for Economic Research v. United States*, 302 F.2d 934, 938 (Ct. Cl. 1962), cert. denied 372 U.S. 976 (1963); *Scripture Press Foundation v. United States*, 285 F.2d 800, 804–806 (Ct. Cl. 1961), cert. denied 368 U.S. 985 (1962). Profits may be realized or other nonexempt purposes may be necessarily advanced incidental to the conduct of the commercial activity, but the existence of such nonexempt purposes does not require denial of exempt status so long as the organization's dominant purpose for conducting the activity is an exempt purpose, and so long as the nonexempt activity is merely incidental to the exempt purpose. See *American Institute for Economic Research v. United States*, 302 F.2d at 937–938; *Industrial Aid for the Blind v. Commissioner*, 73 T.C. 96, 101 (1979); *Pulpit Resource v. Commissioner*, 70 T.C. 594, 611 (1978). Cf. *Senior Citizens Stores, Inc. v. United States*, 602 F.2d 711, 713–714 (5th Cir. 1979); *Squire v. Students Book Corp.*, 191 F.2d 1018, 1020 (9th Cir. 1951). Hence, we must analyze petitioner's business activities to see if they are operated primarily for exempt purposes, or are instead conducted in substantial degree or primarily for the purpose of making profits.

We conclude that petitioner fails to satisfy the aforementioned standards, and thus is not operated "exclusively" for charitable or educational purposes within the meaning of the statute. First of all, petitioner carries on substantial activities which are not directly related to any exempt purpose. In cooperation with Madar, Inc., petitioner leases oil well drilling equipment. This business is conducted outside the Navajo Reservation, and the record fails to show that Madar employs Navajos or otherwise furthers petitioner's exempt purposes. The

---

organization which is organized and operated for the primary purpose of carrying on an unrelated trade or business is not exempt under section 501(c)(3) even though it has certain religious purposes, its property is held in common, and its profits do not inure to the benefit of individual members of the organization. * * *

contract between petitioner and Madar indicates that mutual profit is the goal of their venture, and our attention has not been directed to any agreements which require Madar to further petitioner's charitable or educational purposes in the operation of the business. Moreover, petitioner is clearly an active participant in the business, and the business is petitioner's most substantial activity. For the fiscal years ended August 31, 1976 and 1977, receipts from petitioner's venture with Madar were petitioner's largest single source of gross income. In the 1977 fiscal year, receipts from that enterprise amounted to 91.6 percent of petitioner's gross income. Plainly, this venture, which is by far petitioner's most important source of revenue, cannot be said to represent only an insubstantial part of its activities. Cf. *Stevens Bros. Foundation, Inc. v. Commissioner*, 324 F.2d 633, 639 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964).

Furthermore, petitioner cannot successfully claim that it was merely a passive investor. Although it entered into an "exclusive machinery and equipment management agreement" with Madar, which is thus responsible for leasing, storing, operating, and maintaining the equipment, Madar is merely petitioner's agent. Petitioner pays the costs of maintaining and operating the equipment, including wages, payroll taxes, workmen's compensation insurance, fuel, repairs, and transportation charges. Madar receives only a management fee, which is 35 percent of realized gross income when the equipment is leased to third parties, or 25 percent of realized gross income when the equipment is operated by Madar for its own use.[10] Madar's position is essentially that of a leasing agent; the only costs it must bear alone are those of storage and finding lessees for the equipment. Petitioner is the party that bears the principal risk of loss in the leasing of the equipment, since petitioner is the party that foots the bill for operating expenses. We conclude, in the circumstances, that petitioner is an active participant in the oil drilling equipment leasing business, and is not merely a passive investor.

---

[10]Petitioner's proposed findings of fact request a finding that 66⅔ percent of lease payments are transferred to GUNCO, and respondent did not object to this finding. However, petitioner's agreement with Madar, as amended, is in the administrative record, and it contains the terms described in the text. However, the discrepancy need not concern us, as it is the method by which Madar is compensated, rather than the amount of the management fee, which is of relevance in reaching our decision.

Petitioner represents that the proceeds from the equipment leasing business are dedicated to charitable and educational purposes, and argues that the operation of this business is therefore not a wholly nonexempt activity. However, numerous cases have held that the destination of business income for charitable uses will not transform the operation of an otherwise nonexempt trade or business into an exempt activity. E.g., *University Hill Foundation v. Commissioner*, 446 F.2d 701, 705–706 (9th Cir. 1971), cert. denied 405 U.S. 965 (1972); *People's Educational Camp Society, Inc. v. Commissioner*, 331 F.2d at 932–935; *John Danz Charitable Trust v. Commissioner*, 231 F.2d 673, 675–677 (9th Cir. 1955), cert. denied 352 U.S. 828 (1956); *Ralph H. Eaton Foundation v. Commissioner*, 219 F.2d 527, 528–529 (9th Cir. 1955); *SICO Foundation v. United States*, 295 F.2d 924, 925 (Ct. Cl. 1961); see *Randall Foundation v. Riddell*, 244 F.2d 803, 806–808 (9th Cir. 1957); *Western Catholic Church v. Commissioner*, 73 T.C. 196, 211–213 (1979), on appeal (7th Cir., Jan. 14, 1980); *Help the Children, Inc. v. Commissioner*, 28 T.C. 1128, 1130 (1957). We find not only that petitioner's oil drilling equipment leasing business was a substantial part of petitioner's activities unrelated to any charitable purposes, but also that petitioner was operated primarily to carry on commercial activities for profit and not for exempt purposes. Petitioner was thus not operated "exclusively" for exempt purposes within the meaning of the statute or regulations. See sec. 1.501(c)(3)–1(c)(1), Income Tax Regs., *supra* n. 8.

The Commissioner has issued a number of rulings in this field under a variety of assumed sets of facts. E.g., Rev. Rul. 77–272, 1977–2 C.B. 191; Rev. Rul. 77–111, 1977–1 C.B. 144; Rev. Rul. 76–419, 1976–2 C.B. 146; Rev. Rul. 76–408, 1976–2 C.B. 145; Rev. Rul. 75–284, 1975–2 C.B. 202; Rev. Rul. 74–587, 1974–2 C.B. 162; Rev. Rul. 73–128, 1973–1 C.B. 222; Rev. Rul. 73–127, 1973–1 C.B. 221. At least some of them involve obviously borderline cases, and there are rulings reaching opposite results in differing factual situations. The petitioner places considerable reliance on several such rulings which it regards as favorable to it. However, the facts of the present case differ substantially from those assumed in the various rulings relied upon.

The pivotal consideration in this case is that petitioner was directly engaged (either by itself or through its agent) in the conduct of a commercial leasing enterprise for the principal

..purpose of realizing profits, without any showing that such enterprise was in any way related to an exempt purpose. That enterprise appears to be its principal activity, at least measured by its total gross income. Moreover, even as to other activities in which it engaged, the charitable aspects—such as the training of unskilled Navajo workers—appear on this record to be of relatively minimal consequence. There are also possible deficiencies in the record relating to petitioner's other activities that we need not consider in view of our conclusion that petitioner was operated for the principal purpose of realizing a profit in a venture unrelated to any charitable objective. We hold that petitioner does not qualify as an organization operated "exclusively" for exempt purposes, even though its operations may further some charitable ends.

*An appropriate order will be entered.*