PEOPLE OF GOD COMMUNITY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4806–79X.     Filed October 14, 1980.

*James A. Schmiesing* and *Leo Philip Reilly,* for the petitioner. *Larry N. Johnson,* for the respondent.

OPINION

FAY, *Judge:* Respondent determined petitioner does not qualify for exemption from Federal income tax as an organization described in section 501(c)(3).[1] Having exhausted its administrative remedies as required by section 7428(b)(2), petitioner has

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

timely invoked the jurisdiction of this Court for a declaratory
judgment pursuant to section 7428(a). The issues are whether
petitioner is operated exclusively for religious or other exempt
purposes and whether part of petitioner's net earnings inures to
the benefit of private individuals. If we find petitioner is an
organization described in section 501(c)(3), we must also deter-
mine whether petitioner is a "church" for purposes of sections
170(b)(1)(A)(i) and 509.

This case was submitted for decision on the stipulated
administrative record under Rules 122 and 217, Tax Court Rules
of Practice and Procedure. The evidentiary facts and representa-
tions contained in the administrative record are assumed to be
true for purposes of this proceeding.[2]

Petitioner People of God Community is a California nonprofit
corporation organized on November 22, 1977. As an unincorpo-
rated group of individuals, People of God Community was begun
in 1975 or 1974. At the time its petition in this case was filed,
petitioner's principal office was located in Del Mar, Calif.

Petitioner is operated as a Christian church. Its goals are to
establish a vast family or community of people who recognize
God's sovereign ownership; to proclaim through life and words
the good news that the resurrected and living Jesus of Nazareth
is Christ the Lord; and to see the Church restored to its New
Testament power, purity, purpose, and pattern. Although it has
no separate written doctrine of its own, petitioner recognizes the
earliest Christian dogmas embodied in the Apostles' Creed, the
Nicean Creed, and the Athanasian Creed. Petitioner believes
itself to be a part of the historic Church that Jesus Christ said He
would build and advocates a return to New Testament principles
to counteract the fragmentation and isolation of modern society.
In short, petitioner represents mainstream Protestantism
searching for its roots. Petitioner seeks the simplicity, sincerity,
and purity of purpose of the earliest Christian congregations.

Petitioner's members number about 150, in two congregations.
Petitioner has tried to bring its followers closer together
geographically as well as spiritually, and the members try to
support one another as individuals, as family members, and as
members of their congregations. They gather together in small

---

[2]*Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 489 (1977); Rule 217(b)(1),
Tax Court Rules of Practice and Procedure.

groups, in either "nonresidential households" or "residential households" depending on whether or not the group members live together under one roof. The congregations and the church as a whole also meet together regularly in various rented facilities. Services include periods of singing and praise, teaching from the Bible, and prayer and intercession. Petitioner's ministers also perform baptisms, marriages, and funerals.

Petitioner has three ministers, Charles Donhowe (Donhowe), Michael Law (Law), and Timothy McCombs (McCombs), who also comprise its board of directors. Petitioner is organized as a membership corporation, and its three directors are its only corporate members. In other words, petitioner's ministers completely control its affairs.

Donhowe is petitioner's founder and the "Pastor of the Community." He was ordained as a Minister of the Gospel by the American Lutheran Church in 1962 and served for 8 years as the pastor of a Lutheran Church in southern California. Prior to joining petitioner, Law served as a minister in the Church of Christ for 5 years. McCombs has worked closely with Donhowe and was ordained by petitioner in 1977.

Since 1975, Donhowe's compensation from petitioner has been based on a percentage of the gross tithes and offerings received. The precise method by which the percentage is determined is not made explicit by the record. Generally, Donhowe's percentage is based on what he received in the prior year, adjusted upward to reflect his increased personal expenses such as "home improvements and rapidly rising taxes" and downward to the extent that larger gross receipts permit an increase in the compensation of petitioner's other ministers, who also receive a (smaller) percentage of gross tithes. No upper limit is set for the total amount Donhowe could receive under the formula. A predetermined part of Donhowe's compensation is designated as "housing allowance,"[3] which he is applying toward the purchase of a home. Donhowe's compensation in the first 10 months of 1977 totaled $29,109 (or about $34,900 per year), which constituted 63.6 percent of petitioner's gross receipts for the same period. Donhowe's compensation of $29,468 for the period January 1 to October 11, 1978 (about $36,700 per year) was 53 percent of

---

[3]See, e.g., sec. 107(2).

petitioner's receipts for that period (exclusive of loan repayments). Total ministers' salaries made up 86 percent of petitioner's 1978 budget and 69 percent of petitioner's 1977 budget.

The percentage-of-gross-tithes method for determining ministers' compensation was originated by Donhowe in 1974 or 1975 and has been continued by petitioner. Donhowe wanted to keep his newly formed church out of debt so that his ministry would not be a burden on his followers. In the administrative record, Donhowe stated:

It was my determination that if the people prospered and were blessed, then I too, would prosper and be blessed. But if the people would suffer or experience deprivation, I too would experience it along with them. I find this consistent with scripture, that "if one member suffer, all suffer. That if one member rejoices, we all are to rejoice." From that time on, I began to function on a percentage basis and found that my basic needs and necessities were taken care of.

Donhowe devotes 50 to 100 hours per week to his ministry.

When it first applied for exemption, petitioner had a loan program whose purpose was to allow the members of each congregation to live closer together. To the extent feasible, geographic proximity is part of the group's commitment to their shared life in Jesus. The amounts of the loans ranged between $75 and $3,000; some were for apartment and house rentals and some were to help with downpayments on homes. Written agreements were not executed and no interest was charged. According to petitioner, the loan recipients were not "poor and needy" but were instead "in need." Informed during the administrative process that respondent objected to the private benefits inherent in petitioner's loan policies, petitioner discontinued the program. One loan of $1,600 is still outstanding, but all other loans have been repaid in full. Petitioner will not provide further loans to its members.

Respondent's final determination letter provided, in part, as follows:

Our adverse ruling was made for the following reason(s):

You are not operated exclusively for charitable, religious or any other exempt purpose as described in section 501(c)(3) of the Code. You will not be operated in such a manner that no part of your net earnings will inure to the benefit of any individual. Moreover, you are operated for private rather than public interests. * * *

Section 501(a) exempts from income tax organizations, among others, described in section 501(c)(3).[4] An organization will qualify under section 501(c)(3) only if (1) it is organized and operated exclusively for exempt purposes, (2) no part of its net earnings inures to the benefit of any private shareholder or individual, and (3) it devotes no substantial part of its activities to political or lobbying activity. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 491 (1977). Accord, art. 101(6)–1, Regs. 86 (1934).

The issues presented in this case are whether petitioner has satisfied the first two of the above requirements and, if so, whether petitioner is a "church" for purposes of sections 509(a)(1) and 170(b)(1)(A)(i).

Respondent argues that petitioner's loan policies and ministers' compensation each demonstrate both private inurement of net earnings and prohibited private purposes. While not necessarily identical, the prohibitions against private inurement and private purposes overlap to a great extent (*Western Catholic Church v. Commissioner*, 73 T.C. 196, 209 n. 27 (1979)), and we will confine our discussion herein to the private inurement issue.

Petitioner first contends, and respondent agrees, that it is entitled to pay its ministers reasonable compensation. This principle is well established. *Saint Germain Foundation v. Commissioner*, 26 T.C. 648 (1956). Petitioner goes on to argue that the compensation paid Donhowe and its other ministers is reasonable in amount and that the method by which such compensation is determined is not unreasonable per se. We find for respondent.

---

[4]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\* \* \* \* \* \* \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \* \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for \* \* \* charitable, scientific, \* \* \* or educational purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, \* \* \* and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

The burden falls upon petitioner to establish the reasonableness of the compensation paid to Donhowe and petitioner's other ministers. *Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 74 T.C. 531 (1980). Petitioner has failed to do so inasmuch as the record on this point contains little more than conclusory assertions and the fact that Donhowe's compensation was partly based on his personal needs. Moreover, the method by which ministers' compensation was determined shows clearly that a part of petitioner's net earnings was paid to private shareholders or individuals.

*Gemological Institute of America v. Commissioner*, 17 T.C. 1604 (1952), affd. per curiam 212 F.2d 205 (9th Cir. 1954), involved a corporation formed by Shipley, a jeweler, and his wife for the purpose of offering courses of instruction in the science of gemmology. Shipley was employed by the corporation as its executive director in return for a fixed salary plus 50 percent of the organization's net receipts. Deciding that the corporation was not tax exempt, we stated:

> Petitioner argues, because of Shipley's ability and past services, that he "was entitled to receive much more than the nominal amount set up as flat salary." This is not disputed. However, when petitioner further says that Shipley's compensation was not part of its net earnings but was only measured by the amount of its net earnings, we can not accept this argument as it is unsupported by the facts. * * *
>
> Regardless of what these amounts are called, salary or compensation based on earnings, it is obvious that half of the net earnings of petitioner inured to the benefit of an individual, viz, Shipley. * * * Such a distribution of net earnings is unequivocally prohibited by the statute. The petitioner has failed to meet one of the essential tests of section 101 (6). Therefore, it does not qualify for the exemptions because all requirements of the section must coexist. [17 T.C. at 1609–1610.]

This case falls squarely within the rule and the rationale of *Gemological Institute*. Whatever Donhowe's services are worth, they are not directly related to petitioner's gross receipts; the value of solace and spiritual leadership cannot be measured by the collection box. By basing Donhowe's compensation upon a percentage of petitioner's gross receipts, apparently subject to no upper limit, a portion of petitioner's earnings is being passed on to Donhowe.[5] See *Birmingham Business College, Inc. v.*

---

[5]Because all of petitioner's operating revenues are derived from tithes and offerings, these must be considered petitioner's "earnings" for purposes of sec. 501(c)(3). Indeed, we have

*Commissioner*, 276 F.2d 476 (5th Cir. 1960), affg. on this point T.C. Memo. 1958-166; *est of Hawaii v. Commissioner*, 71 T.C. 1067 (1979), appeal filed (9th Cir., June 1, 1979); *Founding Church of Scientology v. United States*, 188 Ct. Cl. 490, 412 F.2d 1197 (1969), cert. denied 397 U.S. 1009 (1970). The statute specifically denies tax exemption where a portion of net earnings is paid to private shareholders or individuals. We hold here that paying over a portion of *gross* earnings to those vested with the control of a charitable organization constitutes private inurement as well. All in all, taking a slice off the top should be no less prohibited than a slice out of net.

We do not, however, mean to imply that all contingent compensation arrangements made by charitable organizations will preclude tax-exempt status. Such arrangements are a part of business life and must occasionally be paid by a charity to salesmen, publishers, support groups, and even fund raisers. See *Broadway Theatre League of Lynchburg, Va. v. United States*, 293 F. Supp. 346 (W.D. Va. 1968); *Science and Research Foundation, Inc. v. United States*, 181 F. Supp. 526 (S.D. Ill. 1960). What is prohibited is inurement "to the benefit of any private shareholder or individual." Sec. 501(c)(3); sec. 1.501(c)(3)–1(c)(2), Income Tax Regs. The term "private shareholder or individual" refers to persons who have a personal and private interest in the payor organization. Sec. 1.501(a)–1(c), Income Tax Regs.; *Gemological Institute of America v. Commissioner*, *supra*. The term does not refer to unrelated third parties. *Broadway Theatre League of Lynchburg, Va. v. United States*, *supra*. In other words, section 501(c)(3) denies exempt status to an organization whose founders or controlling members have a personal stake in that organization's receipts. *Founding Church of Scientology v. United States*, *supra*. Such is the case here, where petitioner's ministers, and Donhowe in particular, completely control its affairs. Petitioner therefore fails to qualify for exemption under section 501(c)(3).

Because we have decided this case on the above ground, we

---

previously assumed as much in *Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 74 T.C. 531 (1980); *Unitary Mission Church of Long Island v. Commissioner*, 74 T.C. 507 (1980), appeal filed (2d Cir., July 31, 1980); and *Saint Germain Foundation v. Commissioner*, 26 T.C. 648 (1956). See generally B. Bittker, "Churches, Taxes and the Constitution," 78 Yale L.J. 1285, 1298-1301 (1969).

need not consider whether petitioner's loans program evidenced a substantial private purpose nor whether petitioner is a "church" for purposes of section 509.

To reflect the foregoing,

*Decision will be entered for the respondent.*