GOLDSBORO ART LEAGUE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 806–80X.    Filed December 8, 1980.

---

*John C. Hine,* for the petitioner.
*Joseph T. Chalhoub,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined that petitioner is not exempt from Federal income tax under section 501(c)(3).[1] The prerequisites for declaratory judgment having been satisfied,[2] petitioner has, pursuant to section 7428, invoked the jurisdiction of this Court.

The issue[3] for our determination is whether petitioner is operated exclusively for one or more exempt purposes delineated in section 501(c)(3).

This case was submitted on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by reference.

Petitioner, a nonprofit North Carolina corporation incorporated on May 24, 1971, has its principal office in Goldsboro, N.C. On November 20, 1978, the District Director of Internal Revenue, Atlanta, EP/EO Service Unit, received petitioner's application for recognition of exemption.

On October 26, 1979, respondent issued to petitioner a final adverse ruling letter which denied petitioner tax-exempt status for the following reasons: "You are not operated exclusively for any exempt purpose within the meaning of section 501(c)(3) of the Code. You are operated in furtherance of a substantial commercial purpose. Further, you serve private rather than public interests."

Petitioner's charter states that it is organized for the following purposes:

---

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended.

[2] Petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3).

[3] Petitioner, in its reply brief, has conceded that if we rule in its favor, it is only entitled to exemption prospectively from Nov. 20, 1978, the date petitioner's application was received by respondent.

to promote the appreciation of and participation in the visual arts; to promote and encourage the expression of creativity through the creative arts; to promote education in the fine arts; to sponsor a creative arts center to provide a facility for instruction, creation and display of paintings, statuary and objects of creative arts; but the corporation shall not pursue any purpose or carry on any activity inconsistent with Sections 501(3)(c) [sic] and 170(c)(2) of the Internal Revenue Code.

Petitioner has 12 board members whose professional backgrounds include careers in business, law, education, art, and religion. The president of petitioner, for 1978–79, has a master of divinity degree from Duke University and is Director of Continuing Education at Wayne Community College. Petitioner's vice president is an attorney; its secretary, an interior designer; and its treasurer, an accountant.

Petitioner is the hub of many art activities in Wayne County and is known throughout the State for the quality of its programs. There are no other art museums, galleries, or similar facilities of significant note available within Wayne, or any contiguous, county.

Petitioner operates the Goldsboro Art Center (hereinafter center) which furnishes various educational and charitable services to the community. Specifically, the Center sponsors art classes in conjunction with Wayne Community College (hereinafter college), in such areas as watercolor, oil, and acrylic painting; pottery; interior design; macrame and weaving. The center offers an average of 20 to 25 classes quarterly for approximately 250 students. In addition, on its own, petitioner offers courses for children in pottery, drawing, discovering art, puppetry, creative stitchery, and painting.

The center sponsors art demonstrations, including one at the Wayne County Agricultural Fair each year, and workshops in, for example, Japanese watercolor techniques and Ink Resist (wash techniques). In conjunction with the college and the North Carolina Art Society, the center sponsors film series, including the 13-part "Civilization" series narrated by Sir Kenneth Clark.

Petitioner owns 52 pieces of art as a permanent collection[4] which it displays in various public buildings throughout Wayne County, including the college, Wayne Memorial Hospital, the

---

[4]On petitioner's books, these works are valued at $614.70, but most were donated by the artists themselves and are, therefore, valued at cost and at significantly less than their fair market value. Petitioner estimates their market value to be more than $30,000.

Wayne County administration building, the Goldsboro City Hall Annex, the Goldsboro fire and police complex, the Wayne County revenue building, city parks and recreation, and the Wayne County Public Library. The artwork is hung and maintained by members of petitioner. Local Scout troops, school groups, clubs, and other interested persons are given tours of the center, and an estimate of over 400 people are involved in the center's activities each week.

The director of the center gives a series of lectures on art of the Goldsboro High School humanities classes and speaks to both elementary and secondary Goldsboro and Wayne County public school classes. The director of the center also participates in Wayne County and Goldsboro school system's "career day" each year. Likewise, petitioner conducts art oriented workshops for teachers in Goldsboro and Wayne County and public exhibits of the artwork of Goldsboro and Wayne County public school children. Petitioner offers the Goldsboro Camera Club space for a darkroom. Petitioner organizes bus tours to the North Carolina Museum of Art in Raleigh. Petitioner also sponsors tours to the two local State-supported mental institutions.

Petitioner has some paid employees, but it relies heavily on volunteer help. It also hires some of its staff through the Youth Improvement Program, CETA, the Retired Senior Volunteer Program, and the Community College Work Study Program.

Besides these activities, petitioner operates two public galleries, the Art Market and the Art Gallery. All artworks in these galleries are selected by jury procedures to insure artistic quality and integrity. The Art Market and the Art Gallery are similar in that they both exhibit and sell artwork except that the former invites displays from numerous artists, while the latter only features one artist each month. The Art Market has paintings, drawings, sculpture, etchings, serigraphs, lithographs, weavings, pottery, and mobiles. These galleries often exhibit an artist's more daring work.

Petitioner's sales are made pursuant to a mutual understanding between petitioner and the artist without a written contract specifying the terms of sales. Petitioner collects any sales proceeds and turns over that money, less approximately 20-percent commission for estimated expenses, to the artist. In the fiscal year ended June 30, 1976, gross receipts from the sales in the Art Gallery and Art Market were, respectively, $5,624.50 and

$3,662.33. After subtracting the amounts paid to artists, however, petitioner's receipts were, respectively, $1,005.14 and $398.34.[5] In the fiscal year ended June 30, 1977, gross receipts from the Art Gallery and Art Market were, respectively, $5,984 and $3,309; deducting the amounts paid to artists, petitioner received, respectively, $1,147 and $860.[6] In the fiscal year ended June 30, 1978, gross receipts from the Art Gallery and Art Market were, respectively, $6,281.86 and $5,106.19; reducing these amounts by the amounts paid to the artists, petitioner received, respectively, $1,204.55 and $849.53.[7]

Petitioner lists as its expenses associated with the Art Gallery and Art Market for the fiscal year ended June 30, 1976, respectively, $497.30 and $38.35 and, therefore, shows profits of $507.84 and $359.99, respectively, for that year. Similarly, in the 1977 fiscal year, petitioner's books show expenses relating to the Art Gallery to be $611 and to the Art Market, $184; subtracting these expenses, petitioner's books show, respectively, profits of $536 and $676. In the fiscal year ended June 30, 1978, petitioner's Art Gallery expenses are indicated to be $553.48 and its Art Market expenses shown as $112.42; petitioner's profits for that year, therefore, are $651.07 and $737.11. However, petitioner's books appear only to include as expenses those costs covering supplies, invitations, and receptions relating to these galleries. Petitioner's books do not show what proportion of rent, utilities, insurance, etc., paid by petitioner to maintain the center, is attributable to the maintenance of the two galleries. In order to maintain the center, petitioner paid a total of $9,700.95 for the fiscal year 1976, $9,826 for the fiscal year 1977, and $10,369.83 for the fiscal year 1978. The center houses three classrooms in

---

[5] Eighty percent of the sales receipts would be $4,499.60, instead of the $4,619.36 actually paid to the Art Gallery artists, and $2,929.86, instead of the $3,263.99 actually paid to the Art Market artists. Petitioner's payments to artists were actually, respectively, approximately 82 percent and 89 percent of the sales. There is no explanation in the record for these discrepancies.

[6] Instead of paying 80 percent, or $4,787.20, to Art Gallery artists, petitioner actually paid approximately 81 percent, or $4,837, and, instead of paying 80 percent, or $2,647.20, to Art Market artists, petitioner actually paid approximately 74 percent, or $2,449. There is no explanation in the record for these discrepancies.

[7] Instead of paying 80 percent, or $5,025.49, to Art Gallery artists, petitioner paid approximately 81 percent, or $5,077.31; and, instead of paying 80 percent or $4,084.95 to Art Market artists, petitioner paid approximately 83 percent, or $4,256.66. Again, we find no explanation for these discrepancies.

addition to the two galleries, but these total expenses must in some part be connected with the Art Gallery and Art Market.

Petitioner's total revenues from all sources in these years were, respectively, approximately $47,109, $47,440, and $57,289.

Various classes of membership in petitioner are entitled to a 2- to 10-percent discount in sales prices of artworks in the two galleries. Two of petitioner's members are among the more than 100 artists who have exhibited their art in the galleries.

Petitioner contends that it is operated exclusively for exempt purposes, that the sale of artwork in its galleries is an incidental activity but one which helps it pursue its exempt purposes, that petitioner is not operated in furtherance of a substantial commercial purpose, and that the primary purpose of the sales, as well as petitioner's other activities, is to further the public's appreciation of art and not to serve private interests.

Respondent, by contrast, argues that since petitioner's activities are indistinguishable from activities required in operating a commercial art gallery for profit, petitioner is operated for a substantial commercial purpose; therefore, respondent asserts, under *Better Business Bureau v. United States*, 326 U.S. 279 (1945), petitioner may not qualify for exemption under section 501(c)(3) despite the presence of any number of truly exempt purposes. Moreover, respondent maintains that providing individual artists with direct monetary benefits derived from the sale of created artworks serves more than incidentally the private interests of designated individuals.

Respondent's final ruling letter denied petitioner exempt status on the grounds that it is not operated exclusively for any exempt purpose, that it is operated in furtherance of a substantial commercial purpose, and that it serves private rather than public interests. Petitioner has the burden of proof to show that respondent's determination is wrong. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.

We find that petitioner has sustained its burden and is exempt from Federal taxation under section 501(c)(3).

In order to be exempt under section 501(c)(3), an organization must qualify under both the organizational and the operational tests. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. Respondent does not question that petitioner qualifies for exemption under the organizational test; rather, respondent's denial of exemption is

based on his conclusion that petitioner does not satisfy the operational test.

The operational test requires an organization's activities to be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3) and not, except to an insubstantial part, those which do not further an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. A substantial nonexempt purpose will disqualify an organization from tax exemption despite the number or the importance of its exempt purposes. *Better Business Bureau v. United States, supra.* The operational test focuses on the purpose and not on the nature of the activity. *Federation Pharmacy Services v. Commissioner,* 72 T.C. 687 (1979), affd. 625 F.2d 804 (8th Cir. 1980); *est of Hawaii v. Commissioner,* 71 T.C. 1067 (1979), on appeal (9th Cir., June 1, 1979); *B.S.W. Group, Inc. v. Commissioner,* 70 T.C. 352 (1978). An organization may engage in a trade or business as long as its operation furthers an exempt purpose and its primary objective is not the production of profits. *Greater United Navajo Enterprises v. Commissioner,* 74 T.C. 69 (1980), on appeal (9th Cir., May 13, 1980); *B.S.W. Group, Inc. v. Commissioner, supra;* sec. 1.501(c)(3)–1(e)(1), Income Tax Regs. An organization is not operated exclusively for one or more exempt purposes, however, unless it serves a public rather than a private interest. Sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs. See *Baltimore Health and Welfare Fund v. Commissioner,* 69 T.C. 554 (1978); *Callaway Family Association v. Commissioner,* 71 T.C. 340 (1978). Whether an organization satisfies the operational test is a question of fact. *Christian Stewardship Assistance v. Commissioner,* 70 T.C. 1037 (1978).

Included among the exempt purposes are "educational" and "charitable" purposes. Sec. 1.501(c)(3)–1(d)(1)(i)(*b)* and *(f),* Income Tax Regs. "Educational" is defined as:

(*a*) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

(*b*) The instruction of the public on subjects useful to the individual and beneficial to the community.

Sec. 1.501(c)(3)–1(d)(3), Income Tax Regs. The promotion of the arts has consistently been recognized as both charitable and educational. *Plumstead Theatre Society, Inc. v. Commissioner,* 74 T.C. 1324 (1980); *Broadway Theatre League of Lynchburg, Va. v. United States,* 293 F. Supp. 346 (W.D. Va. 1968). Indeed,

respondent does not question that the overwhelming purpose of petitioner's art classes, films, museum tours, and display of its permanent collection is charitable or educational. Respondent, however, contends that two of petitioner's activities, the operations of its Art Market and Art Gallery, further a substantial commercial purpose and serve the private interests of individual professional artists. He argues that the evidence indicates that the sales activity is an end in itself rather than a means of accomplishing an exempt purpose. See *Senior Citizens Stores, Inc. v. United States*, 602 F.2d 711 (5th Cir. 1979).

We disagree with respondent's conclusions and find that the evidence presented here confirms, as petitioner suggests, that the purpose of the Art Gallery and Art Market is primarily to foster community awareness and appreciation of contemporary artists and to provide a constant flow of art for students to study art and painting techniques.

Among the factors we consider in determining whether an organization is operated to further a substantial commercial purpose are the particular manner in which an organization's activities are conducted, the commercial hue of these activities, and the existence and amount of profit from these activities. *B.S.W. Group, Inc. v. Commissioner, supra* at 357.

In the instant case, since there are no other art museums or galleries in the area, petitioner has found difficulty attracting artists to exhibit their work without the incentive of the Art Gallery and Art Market.[8] Petitioner has a jury to select which works will be displayed, and we find it significant that the works are chosen not for their salability but for their representation of modern trends. Exhibiting an artist's more daring works in a part of the country where there are no nearby art museums or galleries illustrates that petitioner's purpose is primarily to educate rather than to sell.

Moreover, petitioner's activities with respect to the Art Market and Art Gallery must be viewed in connection with petitioner's other activities. The clear impression that we get from the record is one of petitioner's dedication to teach the public, through a variety of means, to appreciate art. We find

---

[8]That there may be other possible means of attracting artists to exhibit their work is not, as respondent suggests, determinative. It is sufficient that we find that petitioner's purpose in these activities is an exempt one.

that petitioner's sales ativities are incidental to its other activities and serve the same overall objective of art education. This is not a case where the other activities are adjunct to petitioner's sales, but, rather, where petitioner's sales activities are secondary and incidental to furthering its exempt purpose. See *Aid to Artisans, Inc. v. Commissioner*, 71 T.C. 202 (1978); *Pulpit Resource v. Commissioner*, 70 T.C. 594 (1978); *Golden Rule Church Association v. Commissioner*, 41 T.C. 719 (1964); *Saint Germain Foundation v. Commissioner*, 26 T.C. 648 (1956); cf. *Senior Citizens Stores, Inc. v. United States, supra; Christian Manner International v. Commissioner*, 71 T.C. 661 (1979).

We are convinced, moreover, that petitioner is not operating these galleries for a profit. Petitioner retains only approximately 20 percent of the gross receipts from the sales and uses this amount to defray its expenses. A review of petitioner's books for 3 years shows that petitioner has either made no profit or, at most, a negligible one, for these years.

Finally, we reject respondent's contention that petitioner is operated for the private benefit of individuals.[9] Firstly, we find that petitioner's purpose in operating these two galleries is art education for the benefit of the public. Secondly, the private benefit prohibited under section 501(c)(3) relates to a benefit to "designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests." Sec. 1.501(c)(3)–(d)(1)(ii), Income Tax Regs. The artists exhibited in these two galleries had their works selected by a jury which these artists did not control. Similarly, the proscription against private inurement to the benefit of any shareholder or individual does not apply to unrelated third parties.[10] *People of God Community v. Commissioner*, 75 T.C. 127 (1980); *Broadway Theatre League of Lynchburg, Va. v. United States, supra*. Of the more than 100 artists exhibited in the two

---

[9]In support of its position, among other references, respondent cites two revenue rulings, Rev. Rul. 71–395, 1971–2 C.B. 228, and Rev. Rul. 76–152, 1976–1 C.B. 152. We find the earlier revenue ruling inapposite and the 1976 ruling distinguishable from the instant case. In any event, a revenue ruling states respondent's position and need not be followed by this Court. *Browne v. Commissioner*, 73 T.C. 723 (1980) (concurring opinion).

[10]The prohibitions against private inurement and private purposes encompass many of the same elements. See *People of God Community v. Commissioner*, 75 T.C. 127 (1980); *Western Catholic Church v. Commissioner*, 73 T.C. 196, 209 n. 27 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th Cir. 1980).

galleries, only 2 members of petitioner have exhibited their works in these galleries and neither of these members is on petitioner's board of directors.

Because petitioner is organized and operated exclusively for an exempt purpose, is not operated in furtherance of a substantial commercial purpose, and serves public rather than private interests, petitioner is entitled to exemption from Federal taxation under sections 501(a) and 501(c)(3).

*Decision will be entered for the petitioner.*