THE SOUTHERN CHURCH OF UNIVERSAL BROTHERHOOD ASSEMBLED, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14064–78X.     Filed September 10, 1980.

*W. L. Wooten*, for the petitioner.
*Stephen E. Sokolic*, for the respondent.

---

OPINION

WILBUR, *Judge:* This is an action for declaratory judgment pursuant to section 7428.[1] Petitioner, the Southern Church of Universal Brotherhood Assembled (TSCUBA, hereinafter referred to as the church), filed an application for recognition of exemption from Federal income tax on February 27, 1978, seeking exemption under section 501(c)(3) and claiming to be a church. Upon completion of the administrative consideration of petitioner's status, respondent on June 5, 1978, issued a proposed adverse ruling providing in part:

Based on all information submitted, it appears that part of your net earnings inure to the benefit of your minister since funds are provided to meet his personal expenses. Further, the organization appears to be serving a private rather than a public interest, since the funding of your organization almost entirely by contributions from one person, your minister, and the subsequent paying of expenses for his residence and his food expenses have the effect of reducing his Federal income tax liability.

Therefore, we have concluded that you are not an organization which is described in section 501(c)(3) of the Code. Accordingly, you are required to file income tax returns on Form 1120.

Following the issuance of the final adverse determination letter on December 12, 1978, petitioner timely filed the present action seeking a declaratory judgment that it is entitled to exemption as a church. The administrative record has been stipulated and the controlling facts are here summarized.

Petitioner was incorporated in Maryland in August 1976. The articles of incorporation recite that petitioner is organized to operate a church for religious purposes. The articles provide that the authorized number and qualification of members of the corporation, the different classes of membership, if any, and the voting and other rights and privileges of the members shall be set forth in the bylaws. Section 11 of the bylaws states that there shall be two classes of members of the corporation. Regular memberships are limited to 25 and consist of those persons elected by the board of trustees. Regular members are entitled to one vote at all membership meetings. Associate

---

[1] Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended.

members include anyone affiliated with the corporation. Associate members are not entitled to vote.

Since the time of incorporation, petitioner has had the same five trustee-members, none of whom are related to each other by blood or marriage. All of the members are officers in the corporation. The president and minister is Mr. Wooten. The tenets of the church were described in its application for tax-exempt status as follows:

Our mission is to establish and operate a church dedicated to the Universality of the Brotherhood of man. Our continuing sermon will use as its text the Chesapeake Bay, its rivers and estuaries to demonstrate the indiscriminate provision of food, energy, water and minerals to all mankind resident within the tide water areas of the Bay by our bountiful Father.

The church's activities consist of meetings of members with reception, invocation, meditation, silent prayer, announcements, and benediction. No sacerdotal functions are performed, as they are not part of the tenets of the church. Petitioner also proposes to conduct "marine learning institutes," or MLIs, which are boat outings to collect material from the Chesapeake Bay to demonstrate the laws of God by which things work and the divine rules for getting things done. The church presently owns a Ventura Cat sailboat which can carry a combined passenger and crew weight of 500 pounds, but intends to purchase a larger boat to conduct the MLIs.

Petitioner is affiliated with the Acquarian Church of the Brothers and Sisters of Jesus Christ (TACT). Petitioner sends monthly accounts of its collections to TACT, but except for yearly dues, submits no contributions to TACT. TACT advocates affiliation with it as a way to protect one's tax freedom and lead a holy, tax-free life.

TACT ordained Mr. Wooten. The requirement for ordination was that Mr. Wooten speak English. Mr. Wooten devotes 20 hours a week to church activities and 40 hours a week to outside employment. He and his family own the residence that constitutes the parsonage and the place where services are held. Petitioner pays the utilities, fuel, maintenance, and repair expenses of the parsonage. Further, it provides the Wooten family with food, postage, stationery, pots and pans, dishes, glassware, sheets, blankets, towels, and curtains. Section 19 of the bylaws provides that in lieu of a parsonage allowance, the minister shall have "occupancy and free use of the houses,

grounds, glebes, books, paintings and other property made available by his separate congregation." Mr. Wooten draws no salary for his services.

For the year 1976, the church's total income was $6,987.84, $6,573 of which was donated by Mr. Wooten. Over $4,495 was expended on the items enumerated above. In 1977, petitioner's gross income was $14,373.33, $14,372 of which was donated by Mr. Wooten. Petitioner spent more than $10,000 on the above items. A breakdown of expenses for 1976 and 1977 is provided below:

| Expenses | 1976 | 1977 |
|---|---|---|
| Utilities and fuel | $1,383.65 | $2,141.24 |
| Maintenance and repair | 544.22 | 3,552.89 |
| Supplies and sustenance | 2,469.99 | 3,982.09 |
| Tax and insurance | 98.00 | 488.50 |
| Transportation | 1,334.29 | 2,207.61 |
| Travel | 588.49 | 1,147.20 |
| Library | 144.20 | 210.80 |
| Donation | --- | 32.00 |
| Total expenses | 6,562.84 | 13,762.33 |

Respondent twice requested additional information to assist in evaluating the church's application, which Mr. Wooten promptly supplied. Respondent issued a final adverse determination letter on December 12, 1978. Its administrative remedies exhausted, petitioner timely filed a petition for a declaratory judgment with this Court. The evidence before the Court consists of the pleadings and the administrative record.

To qualify for exemption under section 501(c)(3),[2] petitioner has the burden of showing, inter alia, (1) that it was organized

---

[2]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.
(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

    *      *      *      *      *      *      *

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

and operated exclusively for religious or charitable purposes (i.e., that it served a public and not a private purpose, sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs.); and (2) that no part of its earnings inured to the benefit of a private individual or shareholder. Even for an organization claiming the benefits of section 501(c)(3) as a religious organization, "exemption is a privilege, a matter of grace rather than right." *Christian Echoes National Ministry, Inc. v. United States,* 470 F.2d 849, 857 (10th Cir. 1972), cert. denied 414 U.S. 864 (1973). After careful consideration of all the evidence of record, we are not satisfied that petitioner has made the requisite showing.

We do not believe that the church served a public purpose, as required by the statute. Sec. 1.501(c)(3)–1(d), Income Tax Regs. Instead, the administrative record contains ample evidence that the church served the private purposes of its minister, Mr. Wooten. First, the membership was limited to 25, and there actually were only 5 members, the same 5 who served as officers and trustees since the corporation was formed in 1976. Second, substantial portions of the income for both 1976 and 1977 were expended for the benefit of the Wooten family.[3] The church pays not only rent for a parsonage (formerly the Wooten home), but all of its minister's living expenses. The great majority of its budget is expended for that purpose. Finally, virtually all of the church's income is donated by the president-minister, Mr. Wooten.

Petitioner challenges the adverse determination by the IRS on two additional grounds. First, it alleges that it is operating a Christian school and that denial of its tax-exempt status would violate the free exercise clause of the First Amendment. Second, the church contends that since pursuant to section 508 it did not have to file to receive tax-exempt status, the IRS is not authorized to deny tax-exempt status to petitioner.

Petitioner's claim that it is operating a Christian school is unsupported by the administrative record. Petitioner denied it was conducting a school in its initial application. Apparently, the

---

[3] We note that supplies are counted in with sustenance expenses. Mr. Wooten estimated that 13 percent of this figure was actually spent on supplies. Part may have been spent on church supplies, but, as the amount is speculative, we do not attempt to estimate, nor do we express an opinion as to what portion was allocable to church purposes and what portion was allocable to the Wootens' personal supplies (i.e., stamps). We consider the entire amount to be in the nature of a personal living expense, as petitioner has not submitted any evidence to the contrary.

church is now claiming that its "marine learning institutes" constitute a school, and that petitioner is entitled to tax-exempt status as an educational organization. Our holding that petitioner serves a private rather than a public purpose precludes petitioner's qualification as a tax-exempt educational organization. Sec. 1.501(c)(3)–1(d), Income Tax Regs. Further, petitioner does not meet the requirements of an educational organization as defined in section 1.501(c)(3)–1(d)(3), Income Tax Regs.

Petitioner's second argument likewise fails. While it is true that section 508(c)(1)(A)[4] excepts churches from the general filing requirements, a church may voluntarily file an application to obtain an IRS determination of its exempt status. Sec. 1.508–1(a)(4), Income Tax Regs. When it does so, the IRS has the duty to review the application and reach a decision with regard thereto. We believe that the administrative record clearly shows that respondent acted in an impartial, unbiased manner in refusing petitioner's requested tax exemption. We find no discrimination, nor do we find the refusal was based on a judgment of petitioner's religious tenets.

Petitioner attempts to bootstrap the issue by asserting that it is entitled to section 501(c)(3) status as a matter of right, and for the IRS to deny its tax-exempt status would deprive petitioner of its constitutional right to the free exercise of religion. The fallacy in this argument is that it begs the question of petitioner's tax-exempt status. Section 1.508–1(a)(4), Income Tax Regs., states that "Any organization excepted from the requirement of filing notice under section 508(a) will be exempt from taxation under section 501(c)(3) *if it meets the requirements of that section,* whether or not it files such notice." (Emphasis added.) As discussed above, petitioner is not a qualified 501(c)(3) organization and it is for that reason that respondent's adverse ruling on petitioner's application will be upheld.[5] The First Amendment right to free exercise of religion is not absolute and

---

[4]SEC. 508. SPECIAL RULES WITH RESPECT TO SECTION 501(c)(3) ORGANIZATIONS.
(c) EXCEPTIONS.—
   (1) MANDATORY EXCEPTIONS.—Subsections (a) and (b) shall not apply to—
    (A) churches, their integrated auxiliaries, and conventions or associations of churches,
   * * *

[5]Our holding in no way reflects upon the merits of petitioner's religious beliefs. Our sole concern here is whether petitioner qualifies for exemption from Federal income taxation under sec. 501(c)(3).

indirect and incidental burdens thereon are constitutionally proper. *General Conference of the Free Church of America v. Commissioner,* 71 T.C. 920 (1979); *Johnson v. Robison,* 415 U.S. 361 (1974); *Gillette v. United States,* 401 U.S. 437 (1971).

We hold that petitioner has not shown that it serves a public rather than a private purpose, and the respondent did not err in denying the exempt status claimed under section 501(c)(3).

*An appropriate decision will be entered.*