RETIRED TEACHERS LEGAL DEFENSE FUND, INC., PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19607–80X.     Filed February 24, 1982.

Alfred Kirshner (an officer), for the petitioner.
*Joseph T. Chalhoub*, for the respondent.

### OPINION

TIETJENS, *Judge*: Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3).[1] Petitioner, challenging respondent's adverse determination, has invoked the jurisdiction of this Court for a declaratory judgment[2] pursuant to section 7428.

The issue for our decision is whether petitioner is organized and operated exclusively for one or more exempt purposes within the meaning of section 501(c)(3) or whether petitioner serves private rather than public interests.

The case was submitted for decision on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by reference.

Petitioner, incorporated under the Not-for-Profit Corpora-

---

[1] All statutory references are to the Internal Revenue Code of 1954 as amended, unless otherwise stated.

[2] The prerequisites for declaratory judgment have been satisfied: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

tion Law of the State of New York on September 24, 1979, has its principal place of business in New York, N.Y. According to petitioner's certificate of incorporation (certificate), the purposes for which petitioner was formed are:

(a) To protect the financial stability of the N.Y.C. Teachers' Retirement System by ensuring that only bonds with A, AA, or AAA ratings are purchased; that prices paid are no higher than market price; and that losses that have been incurred are restored.

(b) The corporation is formed exclusively for charitable, literary and educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1954 as amended.

(c) The corporation shall not practice law under the terms of sec. 495(5) of the Judiciary Law.

(d) No legislative and no lobbying activities will be undertaken.

(e) To protect the contributions and pensions of retiree members of the N.Y.C. Teachers' Retirement System.

In addition, petitioner's certificate states:

(1) Notwithstanding any other provision of these articles, the corporation is organized exclusively for one or more of the following purposes: * * * charitable * * * as specified in section 501(c)(3) * * * and shall not carry on any activities not permitted * * * a corporation exempt from Federal Income Tax under 501(c)(3) * * *

(2) No part of the net earnings of the corporation shall inure to the benefit of any member, trustee, director * * * or any private individual * * *

\*       \*       \*       \*       \*       \*       \*

(4) In the event of dissolution, all the remaining assets * * * shall * * * be distributed to another organization exempt under section 501(c)(3) * * *

Petitioner's bylaws reiterate the purposes listed (a) through (e) above.

Membership in petitioner is open to any retiree of the New York City Teachers' Retirement System (system) who is receiving a pension. Membership fees are $5 per year. Among an enrollment of approximately 105,000 teachers in the system are 25,000 retired teachers. Of these retirees, approximately 8,000 aged 75 to 100, receive less than $4,000 a year in retirement benefits and are afflicted with various physical and economic disabilities.

Petitioner distributes a newsletter to pensioners through which they are informed of the stability of pension fund assets. Moreover, in the past newsletters, petitioner has solicited funds from its members to finance litigation brought by

petitioner's president, Alfred Kirshner. The action supported by petitioner is a derivative suit which seeks to secure restitution of an alleged $204 million loss of the system's assets. In *Kirshner v. United States*, 603 F.2d 234 (2d Cir 1978), the Circuit Court held that a beneficiary of a city pension fund had standing to sue, under section 10b of the Securities Exchange Act of 1934 and section 17(a) of the Securities Act of 1933, the pension fund trustees in order to challenge the purchase of New York City bonds. The court, however, held the District Court had correctly dismissed his constitutional and civil rights legislation claims.[3] Publicity about the outcome of this suit has appeared in the New York Times, the Wall Street Journal, and the New York Law Journal. Representatives from public retiree organizations believe the principles of the *Kirshner* case will apply to 12 million State and local public employee pension plan members.

After the *Kirshner* case is decided on the merits, petitioner contemplates no further activities except other legal challenges, as necessary, to remedy abuses by the trustees of the system's pension fund and the supervision of pension fund investments to ensure that there continues to be full disclosure under the Federal securities laws.

Petitioner argues herein that denying it exemption violates its members' First Amendment privileges, that the three operational test regulations used by respondent to deny it exemption are unconstitutionally vague, and, alternatively, that it meets the regulations' requirements and is organized and operated exclusively for charitable purposes.

Respondent contends that petitioner has failed to prove both that it is organized and operated exclusively for exempt purposes and that it is not operated to serve the private interests of its members.

We agree with respondent.

Petitioner raises various constitutional arguments which we will address first. Citing *Associated Press v. United States*, 326 U.S. 1, 20 (1945), it claims that the solicitation of funds

---

[3]Kirshner had argued that the trustees' actions constituted an impairment of contract in contravention of art. I, sec. 10 of the U.S. Constitution, violated the due process and equal protection clauses of the 5th and 14th Amendments, as well as the Civil Rights Act of 1968, 42 U.S.C. sec. 1983.

through its newsletter is a protected First Amendment right. Here, unlike *Associated Press*, however, respondent is not attempting to prohibit petitioner's dissemination of its newsletter or its solicitation of funds. In denying tax-exempt status to petitioner, respondent is merely asserting that petitioner has not shown that it is entitled to a tax benefit. See *Gen. Conf. of the Free Church v. Commissioner*, 71 T.C. 920, 930–931 (1979). Similarly, in *Cammarano v. United States*, 358 U.S. 498 (1959), the Supreme Court held that a statute prohibiting tax deductions for lobbying activities did not infringe on First Amendment rights. The Court said:

> Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets, as everyone else engaging in similar activities is required to do under the provisions of the Internal Revenue Code. * * * [358 U.S. at 513.]

Petitioner's argument that, by denying it tax-exempt status, respondent is effectively denying petitioner special postage rates[4] and thereby violating its members' rights, likewise confuses a privilege with a right.

Petitioner asserts that it has been accorded disparate treatment, violative of its First Amendment right of free speech, by respondent's denying it tax exemption. If respondent treated petitioner differently from other organizations seeking tax exemption, such a denial of benefits might indeed result in unconstitutional discrimination. *Gen. Conf. of the Free Church v. Commissioner, supra.* However, we have found no evidence in the administrative record to support petitioner's contention and, therefore, find this argument of petitioner's also meritless.

Petitioner cites the case *Big Mama Rag, Inc. v. United States*, 631 F.2d 1030 (D.C. Cir. 1980),[5] to support its argument that the three operational test regulations used by respondent are excessively vague in contravention of petitioner's First and Fifth Amendment rights. In *Big Mama Rag, Inc.*, the Circuit

---

[4]Petitioner reasons that this effect is produced by the U.S. Postal Service's requiring such status before it allows an organization to use the special nonprofit postage rates.

[5]The Circuit Court based its decision on the taxpayer's First Amendment argument and, therefore, did not address itself to the taxpayer's Fifth Amendment contentions.

Court held that the definition of "educational" in section 1.501(c)(3)–1(d)(3), Income Tax Regs., is unconstitutionally vague in violation of the First Amendment. More specifically, the Circuit Court held that the "regulation defining educational * * * does not clearly indicate which organizations are advocacy groups and thereby subject to the 'full and fair exposition' standard" (631 F.2d at 1037), and that the regulation fails to specify the requirements of the "full and fair exposition" test.[6]

While it appears that petitioner is presenting the same argument as the taxpayer in *Big Mama Rag, Inc.*, we do not see how the "full and fair exposition" test could apply to the facts herein. Respondent did not deny petitioner tax-exempt status because it failed the "full and fair exposition" test. To the extent, however, that petitioner may be arguing that it serves an educational purpose and that the term "educational" as used in section 1.501(c)(3)–1(d)(3)(i), Income Tax Regs., is unconstitutionally vague, we will examine that part of the regulation which defines "education" as:

(*a*) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

(*b*) The instruction of the public on subjects useful to the individual and beneficial to the community.

Section 1.501(c)(3)–1(d)(3)(i), Income Tax Regs., proceeds to provide the following examples of educational organizations:

*Example (1).* An organization, such as a primary or secondary school, a college, or a professional or trade school, which has a regularly scheduled curriculum, a regular faculty, and a regularly enrolled body of students in attendance at a place where the education activities are regularly carried on.

*Example (2).* An organization whose activities consist of presenting public discussion groups, forums, panels, lectures, or other similar programs. Such programs may be on radio or television.

---

[6]Sec. 1.501(c)(3)–1(d)(3) provides in pertinent part:

"An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. On the other hand, an organization is not educational if its principal function is the mere presentation of unsupported opinion."

Because the "full and fair exposition" test is not at issue here, we will not comment about whether this test has been applied discriminatorily by respondent in other instances. Cf. *Big Mama Rag, Inc. v. Commissioner*, 631 F.2d 1030, 1036–1037 (D.C. Cir. 1980).

*Example (3).* An organization which presents a course of instruction by means of correspondence or through the utilization of television or radio.

*Example (4).* Museums, zoos, planetariums, symphony orchestras, and other similar organizations.

Where a vague statute affects First Amendment freedoms, it thereby inhibits their exercise. *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972). Although not precise in its argument, petitioner appears to be asserting that this regulation is vague and, therefore, unconstitutionally restricts the publication of its newsletter. We do not agree. Reading the general statements defining "educational" together with the examples that follow them, we find that the term "educational" as used in the regulations concerning tax-exempt organizations is not unconstitutionally vague. It does not appear to us that "men of common intelligence must necessarily guess at its meaning." *Hynes v. Mayor of Oradell,* 425 U.S. 610, 620 (1976) (quoting *Connally v. General Const. Co.,* 269 U.S. 385, 391 (1926)); rather, the broader language of the regulation is clarified by subsequent concrete examples which provide objective norms [7] to illustrate its meaning. As applied to petitioner, its newsletter, which informs petitioner's members about the status of litigation designed to protect their property rights, clearly does not fall under the definition of "educational" as defined in the regulations. Petitioner's dissemination of information to its members, who are only one segment of the public, being limited to retirees of the system, involves a subject only useful and beneficial to these retirees' private interests (i.e., insuring the financial stability of their pension fund).

Petitioner maintains that section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., the three subparagraphs of section 1.501(c)(3)–1(c), Income Tax Regs., and section 1.501(c)(3)–1(d)(2)(iii), Income Tax Regs., are excessively vague and result in arbitrary and discriminatory enforcement, violating its members' Fifth Amendment rights. Basic to due process is the requirement of notice so that, to be constitutionally valid, the regulation must be sufficiently clear in its meaning. *Smith v. Goguen,* 415 U.S. 566, 572 (1974); *Grayned v. City of Rockford, supra* at 108.

---

[7]See *NAACP v. Button,* 371 U.S. 415, 466 (1963)(Harlan, J., dissenting).

Specifically, petitioner alleges that the term "benefit" as used in section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., is used out of context with the statute, is vague, and contains no guidelines for its usage.

Section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., reads:

(ii) An organization is not organized or operated exclusively for one or more of the purposes specified in subdivision (i) of this subparagraph unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests. * * *

We see nothing vague about the term "benefit" as used in this section and, indeed, the definition supplied in Black's Law Dictionary ("Advantage; profit; fruit; privilege; gain; interest," Black's Law Dictionary 143 (rev. 5th ed. 1979)) and quoted in petitioner's brief, when applied to the context of the other language in the regulation, satisfied constitutional requirements. By focusing on the term "benefit," petitioner ignores the operative term "private" in the regulation; it is the purpose of serving private interests which is prohibited an organization seeking qualification under section 501(c)(3). The fundamental reason for granting an organization tax exemption is that it serves a public benefit. As the Supreme Court earlier found in *Trinidad v. Sagrada Orden*, 263 U.S. 578, 581 (1924), "Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain."

Petitioner criticizes the use of the term "benefit" as being an additional requirement not present in section 501(c)(3). The statute only specifically mentions "benefit" in the phrase "no part of the net earnings of which inures to the benefit of any private shareholder or individual." In several cases, we have noted the great overlap of these two prohibitions (i.e., private inurement and private purposes). See, e.g., *Goldsboro Art League, Inc. v. Commissioner*, 75 T.C. 337, 345 n. 10 (1980); *People of God Community v. Commissioner*, 75 T.C. 127 (1980); *Western Catholic Church v. Commissioner*, 73 T.C. 196, 209 n. 27 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th

Cir. 1980). Yet, while incorporating some of the same elements, the requirement specified in the statute deals with the devolvement of net earnings to certain interested individuals. Although an organization may not benefit those individuals financially, it still may emphasize a private purpose which, as we stated earlier, is contrary to being organized and operated exclusively for an exempt purpose.

Moreover, although petitioner claims that all three subparagraphs of section 1.501(c)(3)–1(c), Income Tax Regs., violate the Fifth Amendment, it limits its argument in its brief to an attack on certain terms used in section 1.501(c)(3)–1(c)(1), Income Tax Regs. That subparagraph reads:

> An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

Petitioner criticizes the terms "primarily" and "insubstantial part" as being excessively vague.

Section 501(c)(3) requires that an exempt organization be "operated exclusively" for one or more exempt purposes. The Supreme Court,[8] in *Better Business Bureau v. United States*, 326 U.S. 279, 283 (1945), interpreted similar statutory language and stated:

> in order to fall within the claimed exemption, an organization must be devoted to educational purposes exclusively. This plainly means that the presence of a single non-educational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes.

There is a long history of case law applying the less strict language of the regulation. See *Greater United Navajo Enterprises v. Commissioner*, 74 T.C. 69, 78 (1980), and cases cited therein. Within this context, we reject petitioner's arguments about the vagueness of these terms. Additionally, we see no evidence of discriminatory enforcement of this regulation as applied to petitioner. See generally *Unitary Mission Church v. Commissioner*, 74 T.C. 507 (1980), affd. by unpublished order

---

[8]The Supreme Court was interpreting sec. 811(b)(8) of the Social Security Act, 49 Stat. 620, 639 (1935), which provided an exemption for corporations organized and operated exclusively for educational purposes.

(2d Cir., Jan. 19, 1981), and *Southern Church of Brotherhood v. Commissioner*, 74 T.C. 1223 (1980).

Finally, petitioner alleges that the term "human and civil rights" as it appears in section 1.501(c)(3)–1(d)(2)(iii), Income Tax Regs., is undefined and vague. The pertinent part of the regulation includes among "charitable" purposes "to defend human and civil rights secured by law." This regulation, again, does not appear to be unconstitutionally vague. Consistent with its terms, respondent has granted tax exemption to, for example, an organization that meets with proprietors or trade associations with histories of social and religious discrimination for the purpose of encouraging compliance with civil rights laws (Rev. Rul. 68–438, 1968–2 C.B. 209) and to an organization providing funds solicited from the general public, for the legal defense of members of a religious sect, none of whom are members of the organization, where the litigation concerns substantial constitutional issues of State abridgement of First Amendment rights (Rev. Rul. 73–285, 1973–2 C.B. 174). Cf. *National Right to Work Legal Defense, Etc. v. United States*, 487 F. Supp. 801 (E.D. N.C. 1979) (the right to work was found to be a fundamental right and, therefore, a "human and civil right secured by law"). Although inexhaustive, the language of the regulation is not unconstitutionally vague.

Having dismissed petitioner's constitutional arguments, we will examine petitioner's alternative argument that it is in fact organized and operated exclusively for one or more exempt purposes as delineated in section 501(c)(3) and the regulations thereunder.

Respondent's final ruling letter denied petitioner exempt status for the following reasons:

You are not organized and operated exclusively for one or more exempt purposes within the meaning of section 501(c)(3) of the Code. Also, you are serving a private rather than a public interest.

Petitioner has the burden of proof to demonstrate that respondent's determination is wrong. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.

In order to be exempt under section 501(c)(3), an organization must qualify under both the organizational and the operational tests. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. The

organizational test requires that the written instrument by which the organization is created limit its purposes to exempt ones and not expressly empower it to engage, except insubstantially, in activities which do not further an exempt purpose. Sec. 1.501(c)(3)–1(b)(1) and (2), Income Tax Regs. Likewise, the operational test requires that an organization's activities be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3), and not, except to an insubstantial part, those which do not further an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. The existence of a substantial nonexempt purpose, regardless of the coexistence of an exempt purpose or purposes, precludes an organization from qualifying under section 501(c)(3). *Better Business Bureau v. United States, supra*; *First Libertarian Church v. Commissioner*, 74 T.C. 396 (1980). Moreover, an organization is not operated exclusively for one or more exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs. See *Baltimore Health and Welfare Fund v. Commissioner*, 69 T.C. 554 (1978); *Callaway Family Association v. Commissioner*, 71 T.C. 340 (1978). Therefore, an organization must establish that it is not operated for the benefit of private interests. Sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs.

We find that petitioner fails to satisfy both the organizational and operational tests and, therefore, is not entitled to exemption under sections 501(a) and 501(c)(3).

Petitioner's certificate includes, among its purposes, the protection of the financial stability of the system and of the contributions and pensions of retiree members of the system. Petitioner's primary activity, moreover, involves litigation against the trustees of the system's pension fund in order to protect these same interests.

The foci of the benefits of petitioner's organization and operation are the retirees of the system. Although approximately one-third of its members are poor and disabled, and although the term "charitable" includes "Relief of the poor and distressed" (sec. 1.501(c)(3)–1(d)(2), Income Tax Regs.; see Rev. Rul. 69–161, 1969–1 C.B. 149), over two-thirds of its members do not fall within this classification. The provision of free legal services to persons who are not poor is not an exempt purpose. (See *Christian Stewardship Assistance v. Commis-*

*sioner*, 70 T.C. 1037 (1978), wherein we held nonexempt an organization offering free tax and financial planning advice to individuals contemplating making charitable contributions.)

Similarly, although all of the beneficiaries of petitioner's purposes are elderly individuals, aid to pensioners without regard to need, has been held not a charitable purpose. *Watson v. United States*, 355 F.2d 269 (3d Cir. 1965); *Estate of Leeds v. Commissioner*, 54 T.C. 781, 790–791 (1970).

Petitioner maintains that its legal action has enormous precedential value for the millions of retirees of public pension systems and, therefore, rises to the level of providing public benefit. Even if petitioner is correct in its evaluation of the importance of this litigation, we find the public benefit here too remote. Similarly, in *Ginsberg v. Commissioner*, 46 T.C. 47 (1966), we held that an association whose principal purpose was to dredge certain waterways served to benefit adjacent property owners or dwellers and that "Any objective to benefit the general public by providing a storm haven for small craft * * * was a secondary one." 46 T.C. at 55.

Finally, petitioner asserts that it lessens the burdens of government, defends human and civil rights secured by law, promotes social welfare, and, therefore, serves "charitable" purposes. Sec. 1.501(c)(3)–1(d)(2), Income Tax Regs. Although ensuring the financial stability of a pension fund, to some degree, lessens the Government's burdens, the petitioner only incidentally exists to aid this exempt purpose. See *Watson v. United States, supra* at 274; *Estate of Leeds v. Commissioner, supra*. Similarly, while defending human and civil rights secured by law is an exempt purpose,[9] petitioner's primary function is to serve its members' property interests. Petitioner's major activity and stated purpose is litigation comparable to a stockholder's derivative suit. Indeed, the Circuit Court held that Kirshner had standing to bring his action under the Federal security laws. We find that such litigation does not further a "charitable" purpose. For the same reasons, we also find that petitioner does not promote social welfare within the meaning of section 1.501(c)(3)–1(d)(2)(iii), Income Tax Regs.; any benefit to the social welfare is simply too remote.

---

[9]See pp. 288–289 *supra*, for a discussion of this issue.

Because we have found that petitioner has not satisfied the organizational and operational tests of section 501(c)(3), we find that petitioner is not exempt from taxation under section 501(a).

*An appropriate decision will be entered.*