NEW CONCORDIA BIBLE CHURCH, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
New Concordia Bible Church v. Commissioner
Docket No. 26976-81X.
United States Tax Court
T.C. Memo 1984-619; 1984 Tax Ct. Memo LEXIS 55; 49 T.C.M. (CCH) 176; T.C.M. (RIA) 84619; November 28, 1984. Russell P. Briesacker, Jr., for the petitioner. Dianne I. Crosby, for the respondent. DRENNEN MEMORANDUM FINDINGS OF FACT AND OPINION Drennen,Judge: This case was assigned to Special Trial Judge Joan Seitz Pate for opinion pursuant to section 7456(c) and (d) of the Internal Revenue Code[1] and Rules 180 and 218(a) Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PATE, Special Trial Judge: Petitioner has, pursuant to section 7428, invoked the jurisdiction of this Court to determine whether it is exempt from Federal income tax. The statutory requirements for this Court's declaratory judgment jurisdiction *58 have been satisfied. The only question presented is whether petitioner qualifies for an exemption from Federal income tax under section 501(c)(3). FINDINGS OF FACT Petitioner, the New Concordia Bible Church (hereinafter sometimes referred to as "NCBC"), filed Form 1023, an Application for Recognition of Exemption, with respondent on January 23, 1981. On September 24, 1981, respondent issued a final adverse determination letter denying petitioner's application for exempt status stating as the reasons therefor that-- You have failed to establish that you are operated exclusively for exempt purposes within the meaning of section 501(c)(3). You have failed to establish that no part of your net earnings will inure to the benefit of any private individual. Furthermore, you have failed to establish that you serve public rather than private interests. Even if you were an organization described in section 501(c)(3), you would be a private foundation because you are not a church within the meaning of section 170(b)(1)(A)(i), the only basis upon which you claim non-private foundation status. Additionally, pursuant to section 508(a), the earliest date that recognition can *59 be accorded you is January 27, 1981, the date your application was received. Prior to instituting this declaratory judgment action, petitioner exhausted its administrative remedies within the meaning of section 7428. This case has been submitted on a stipulated administrative record under Rules 122 and 217, and such record is incorporated herein by reference. Any evidentiary facts or representations contained therein are assumed to be true for the purposes of this proceeding. [3] Rule 217(b). *60 Petitioner was formed as an unincorporated association on June 30, 1976, by adoption of Articles of Organization. Its principal offices are in San Diego. It was originally established under the name of the Life Science Church of Tierresanta No. 1247. It is not clear from the record if the organization had any ties with the Life Science Church or when it changed to its present name, The New Concordia Bible Church. Petitioner denies any affiliation with a parent church. Petitioner's Articles of Organization, Art VI, describes its purpose as follows: This church is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future United States Internal Revenue Law). In addition, Art VII states that: No part of the net earnings of the church shall inure to the benefit of, or be distributable to, its members, trustees, officers or other private shareholders or individuals, except that the church shall be *61 authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article VI hereof. No substantial part of the activities of the church shall be the carrying on or propaganda, or otherwise attempting to influence legislation, and the church shall not participate in, or intervene in, (including the publishing or distributions of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of these articles, the church shall not carry on any other activities not permitted: (a) by a church exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law) or (b) by a church, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law). Notwithstanding any other provision of these articles, this church shall not, except to an insubstantial degree, engage in any activities *62 or exercise any powers that are not in furtherance of the purposes of this church. Further, the Preamble to NCBC's By-laws explains: Whereas the Holy Scriptures admonish us to do all things properly and in order * * *, we the undersigned do hereby adopt these constitutional bylaws and hereby determine the discipline and rules according to which the affairs of this church and order shall be conducted, and its temporalities administered. The church shall be operated not for profit, but for the purpose of bringing God's Word and grace to the people of the United States of America and the world * * * NCBC is governed by the "head of the Church" and by a Board of Trustees of three or more members. The Articles of Organization specifically designate Harold E. Holmes as "head of the Church." The governing Board consists of Harold E. Holmes (President), his wife Marjorie L. Holmes (Vice President), and their daughter Victoria E. Holmes (Secretary-Treasurer). In addition to the Governing Board of Trustees (the Holmes family), all other members, if any, serve as "advisory trustees." Control of petitioner's activities is prescribed in the following segments of the By-laws: *63 3.4
The final authority of this church and order shall
be vested in the head of this church and order.
All other members shall be advisory Trustees, whom
the head of this church and order shall listen to
for advice.
3.5
Voting membership shall be limited to those
members approved by the governing board of directors
and the head of the church and order.
4.10
Any vacancy occurring in the governing board of
directors * * * shall be filled by appointment
of the governing board members.
4.11
Should it be necessary to name a new head of
this church and order, such occurrence being
necessary and permitted only in case of death
or incapacity of the present head of the church
and order, the Vice-President of the church and
order shall become President and head trustee
having the authority consistent with the by-laws
of this church. Harold E. Holmes is an ordained minister of the Life Science Church. Petitioner's other members do not appear to be so ordained. Harold and Marjorie Holmes serve as full time employees and devote one hundred percent of their time to NCBC. [4] Little is revealed of the nature of their *64 activities or where or when such services were rendered. They received no salary, but NCBC provided for all their food, clothing, and shelter needs. The dollar amount of this support does not appear in the record. NCBC maintains no membership rolls as it has adopted a "voluntary and informal" structure. The extent of its membership is unknown. The record discloses that NCBC has at least one volunteer member in addition to its founders. NCBC's ministry is conducted primarily in Mexico. It strives to achieve "mutual goals" with Mexican nationals, including the operation of schools in Tijuana. The schools serve local communities that are largely illiterate. All students are admitted free, *65 regardless of race. The "Mexican ministry" also provides food, shelter and spiritual guidance to the needy through a rehabilitation program primarily aimed toward drug and alcohol abusers. The works described above were physically performed by an organization known as the Templo Centro Cristiano operated by Mexican Pastor Jorge Castellano in Tijuana, Mexico. Respondent admits that Reverend Holmes contributed approximately $4,100 to Pastor Castellano to aid the activities of Templo Centro Cristiano. Other than such contributions, however, the extent of NCBC's involvement or the nature of its participation in these projects is unclear. Further, petitioner supplied no details regarding the financing of any other operations. Petitioner also declined to respond to inquiries relating to what benefits, services, or products it provides in connection with any of its separately operated exempt functions. On June 30, 1976, Harold and Marjorie Holmes executed a "Vow of Poverty" making an irrevocable gift "of all possessions of every description now owned or hereafter acquired" in favor of "an Order of the Life Science Church designated as The Order of Almighty God 1247, Chapter. *66 " [5] This gift, is revocable in the event that: civil government officialdom were to 'void' this act against my express will and intent as by invalidating my right to continue as a member, minister or official of the church/order, or by impeding the power of the church or order designated to designate after death succession to religious heirachy, or by blocking the rightful tax-exempt status and maintenance of the church or order * * *" Furthermore, the Articles of Organization, Art. III, state that none of the property of the Church will ever become the property of the parent church or any other church unless given by donation. Petitioner's major financial activities appear to be the solicitation of contributions in the United States with a view toward applying such funds to ministerial and educational activities in Mexico. Written guidelines for solicitation of contributions are included in a "Plan for Stewardship Development" which promotes personal visits of church members to families within the congregation to solicit pledges of monetary support for NCBC's "master plan." The composition of the "master *67 plan", is not revealed in the record. Petitioner filed a Form 990 "Return of Organization Exempt from Income Tax"8 for the period beginning in 1976 and ending December 31, 1980. This return showed that petitioner's assets increased from an estimated $100,000 in 1976 to an estimated $500,000 in 1980. [6] Except for these two amounts, no amounts were shown on the return. The record is void as to the composition of these assets, their sources or the uses to which they were put. No information was supplied as to the amount or nature of revenue, expenses or fund balances. No other financial data was provided except that the return indicated that "all receipts derive from church activities" and that "the church's financial records are insufficient to disclose most of the requested information which is therefore not available." Petitioner's By-laws prescribe a "vow of secrecy" as to financial affairs: 5.5
All church business and religious activity
information shall be kept in strict
confidence and be considered privileged and
kept secret as required by the vow of secrecy
taken by the head of this church and order.
Necessary disbursements paid by the head of
this order to himself (herself), and/or the board
members of this church shall be determined by the
head of this church and order and the majority
vote of its governing board of directors.
*68 Nonetheless, petitioner bases its refusal to supply detailed financial information on the unavailability of such data rather than on the requirement of secrecy. Despite petitioner's assertion that it maintains no formal records, its by-laws require that: 8.1
The church shall keep correct and complete
books and records of account and shall
also keep minutes of the proceedings
of its governing board of directors.
On March 25, 1981, respondent sought specific information from petitioner with respect to numerous questions raised by petitioner's initial application. Respondent's inquiries were contained in a five page letter to NCBC requesting additional budget and financial information, as well as, additional information describing petitioner's operations. Petitioner declined to provide such information on the ground that the questions either did not apply, or that respondent lacked statutory authority to elicit the responses. OPINION Petitioner has applied for exemption from Federal income taxation under sections 501(a) and 501(c)(3).Generally, an organization qualifies for such exemption if it meets a three part test: (1) it must be both *69 "organized" and "operated" exclusively for exempt purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or other individual; and (3) no substantial part of its activities may be political or lobbying activities.[7]Section 501(a) and (c); Greater United Navajo Enterprises v. Commissioner,74 T.C. 69, 76 (1980), affd. without published opinion, 672 F.2d 922 (9th Cir., 1981). Should an organization fail to satisfy any one of these requirements it results in denial of tax exemption. [8] See Western Catholic Church v. Commissioner,73 T.C. 196, 207 (1979), affd. 631 F.2d 736 (7th Cir. 1980); Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977). Frankly, the administrative record in this case is so devoid of specific information that it would be difficult for this Court to express an opinion that any of these requirements has been met. However, we proceed by focusing our attention on the second requirement. [9]
*70 The regulations reiterate the language of the statute that no part of the net earnings of an organization seeking qualification under section 501(c)(3) may inure to the benefit of private individuals. Since both the Code and regulations refer to "no part" of an organization's net earnings, the amount or extent of the benefit conferred on any private individual need not be substantial. Spokane Motorcycle Club v. United States,222 F. Supp. 151 (E.D. Wash., 1963). Further, private inurement may take the form of indirect benefits to individuals.A finding of formal distributions of profit or dividends is not required. E.g., Harding Hospital, Inc. v. United States,505 F.2d 1068 (6th Cir. 1974); Founding Church of Scientology v. United States,188 Ct. Cl. 490, 412 F.2d 1197, 1200 (1969), cert. denied 397 U.S. 1009 (1970); Lowry Hospital Assn. v. Commissioner,66 T.C. 850, 857-58 (1976). An organization *71 will not be denied tax exempt status merely because the creator is the sole or controlling officer. Such a situation, however, presents an obvious opportunity for abuse and calls for open and candid disclosure of all facts bearing upon organization, operations, and finances so that the Court can be assured that by granting the claimed exemption it is not sanctioning abuse of the revenue laws. Where such disclosure is not made, the logical inference is that the facts, if disclosed, would show that petitioner failed to meet the requirements of section 501(c)(3).See, Founding Church of Scientology v. United States,412 F.2d at 1201; Bubbling Well Church v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). Petitioner was organized by the three members of the Holmes family. They transferred their assets to petitioner but retained domination and control over these assets. The record does not disclose how these assets were used. We do not know whether they were spent, given away or transferred back to petitioners at a later date. In addition, petitionerhas not provided any information as to the *72 source, nature or extent of its income. It has not told us the amount of its income, whether the bulk of its income was derived from donations, dividends or other investments, or whether such income was deposited in Church bank accounts or disposed of otherwise. Since petitioners' assets have grown significantly (from $100,000 to $500,000 within five years), such disclosure is absolutely necessary. Further, petitioner has not supplied any information as to its disbursements, who the recipients were, the amounts or the reasons therefor. Complete information as to these disbursements would be necessary to determine that there has been no private inurement. [10]Bubbling Well Church v. Commissioner,supra;Western Catholic Church v. Commissioner,73 T.C. 196 (1979), affd. 631 F.2d 736 (7th Cir. 1980). Petitioner's By-laws allow the head of the Church (Robert Holmes) together with the Directors (the Holmes family) to make "necessary *73 disbursements" to themselves. Further, the Holmes, through their control over petitioners, were able to provide for their own support and the amount of such support rested solely within the discretion of the Holmes family. The record reveals no guidelines or restrictions upon such payments. It also does not detail what services were rendered by the Holmes to petitioner in exchange for such support. Under these circumstances, we have absolutely no way of determining whether there was any private benefit inuring to the Holmes family or any other individual. Since petitioner has not carried its burden of proof, we must uphold respondent's determination. Petitioner bases its contentions that the refusal of exempt status was improper upon three constitutional arguments. First, petitioner contends that section 1.501(a)-1(b)(2), Income Tax Regs. is unconstitutional because it is vague and overly broad, citing Big Mama Rag, Inc. v. United States,631 F.2d 1030 (D.C. Cir. 1980), in support of its position. In that case, exemption was denied because the organization did not meet the definition of "educational" contained in *74 section 1.501(c)(3)-1(d)(3), Income Tax Regs., [1]1 and the Court held that the definition was unconstitutionally vague in violation of the First Amendment. But see, Retired Teachers Legal Fund v. Commissioner,78 T.C. 280, 283-284 (1982). The regulation that petitioner challenges in this case is section 1.501(a)-1(b)(2), Income Tax Regs. which provides that: (2) In addition to the information specifically called for by this section, the Commissioner may require any additional information deemed necessary for a proper determination of whether a particular organization is exempt under section 501(a), and when deemed advisable in the interest of an efficient administration of the internal revenue laws, he may in the cases of particular types of organizations prescribe the form in which the proof of exemption shall be furnished. Petitioner contends that *75 the above quoted regulation is overly broad and its use "provides the Service with a means of discriminatory denial of exemption." However, we must point out that refusal by petitioner to answer respondent's questions was not the basis of the denial to petitioner of exempt status. Respondent's determination was made based on the statutory requirements of sections 501(c)(3) and 508. Further, this Court has not based its decision on the above regulation. Therefore, petitioner has not sustained any injury as a result of the above regulation. To have standing petitioner must: show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant * * * and that the injury fairly can be traced to the challenged action * * * and is likely to be redressed by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,454 U.S. 464, 471 (1982); Gladstone, Realtors v. Village of Bellwood,441 U.S. 91, 99 (1979); Simon v. Eastern Kentucky Welfare Rights Org.,426 U.S. 26, 39, 41 (1976); *76 see generally, United States v. Richardson,418 U.S. 166 (1974). Since in this case the decision of this Court would be unchanged even if the challenged regulation was found unconstitutional, we find that petitioner has no standing for such a challenge. Therefore, we leave consideration of the constitutionality of section 1.501(a)-1(b)(2), Income Tax Regs. to another day. Petitioner cites Larson v. Valente,456 U.S. 228 (1982) in support of its second constitutional argument, that the required disclosure under Regulation 1.501(a)-1(b)(2) allows selective compliance. In Larson, the Court struck down a state statute that required only those religious organizations which received more than half of their total contributions from non-members to make full financial disclosure to state authorities. Those religious organizations which received the bulk of their financial support from members were exempt from filing. The Court found the state statute involved violated the equal protection clause of the fourteenth amendment because it did not require uniform reports from all religions, and in effect, preferred *77 one religion over another. Larson,supra[2] at 253-4. This fact was evident from the language of the statute itself, not the case with this challenged regulation. Further, although we agree that selective enforcement of an otherwise neutral regulation could also result in a violation of petitioner's constitutional rights, we cannot find any evidence in the record to demonstrate that petitioner produced any information that would not have been required of any other organization. The statutory requirements of section 501(c)(3) must be met by all religious organizations seeking a tax exemption - it says so on its face. No religious organization is excused from this hurdle if it wishes to receive its tax benefits. Respondent's determination stems directly from the fact that petitioner failed to show that it met those requirements. General Conference of the Free Church v. Commissioner,71 T.C. 920, 930-932 (1979). Petitioner's third argument, also flowing from Larson v. Valente,supra, is that its First Amendment *78 rights with regard to the establishment and exercise of religion have been violated by the denial of tax exempt status under section 501(c)(3). It would be foolish to maintain that denial of such tax exemption will not effect the extent of the activities of petitioner. Denial will result in its income being subject to taxation and therefore less money will be available for religious activities. Further, since persons making contributions to petitioner will not be entitled to an income tax deduction for them, petitioner will obviously have a more difficult task in raising money, Since, admittedly, denial of such exemption will therefore burden petitioner in its activities, we must look to see if the government's interest justifies such impairment of rights. In United States v. Holmes,614 F.2d 985, 989-990 (5th Cir. 1980), the Court summarized the applicable balancing test as The Supreme Court has employed a two part balancing test in determining when such conduct is protected by the free exercise clause. First, plaintiff must show a burden on the exercise of his religion *79 by the law under review. Second, the burden will be upheld only if the government interest outweighs the degree of impairment of free exercise rights * * * Requiring plaintiffto comply * * * in order to show its entitlement to tax exempt status results in only an incidental burden upon his free exercise of religion * * * Plaintiff is free to espouse his religious doctrine and to solicit support for his cause. He simply must allow the government access to information in order to determine whether the church remains within the criteria for a lighter tax burden. The church may, of course, forego the exemption and limit IRS access to church records. Balanced against the incidental burden on church religious activities is the substantial government interest in maintaining the integrity of its fiscal policies * * * This interest is sufficiently compelling to justify any incidental infringement of plaintiff's First Amendment rights * * * (Footnote omitted). Based on this test, it has been held on numerous occasions that denying tax exempt status to religious organizations that *80 fail to show that they meet the three requirements of section 501(c)(3) does not violate their first amendment rights. E.g., Christian Echoes National Ministry, Inc. v. United States,470 F.2d 849, 856-7 (10th Cir. 1972), cert. denied, 414 U.S. 864 (1973); Southern Church of Brotherhood v. Commissioner,74 T.C. 1223, 1228-9 (1980); General Conference of the Free Church v. Commissioner,71 T.C. 920, 930-1 (1979). Petitioner may continue to promote its religious views without restraint. Similarly, petitioners can continue to solicit contributions freely. See, Village of Schaumburg v. Citizens For A Better Environment,444 U.S. 620 (1980). Furthermore, it repeatedly has been held that since the Government may constitutionally tax the income of religious organizations, it may constitutionally decide to grant reasonable exemptions while continuing to tax those who fail to meet these qualifications. Parker v. Commissioner,365 F.2d 792, 795 (8th Cir. 1966), affg. in part Foundation of Divine Meditation Inc. v. Commissioner,T.C. Memo. 1965-77. *81 Accord, Regan v. Taxation with Representation of Washington,457 U.S. 1129 (1983) We, therefore, find that petitioner's constitutional challenges to denial of its tax exempt status are without merit. Further, since petitioner has not demonstrated that no part of its net earnings inure to the benefit of private individuals, we hold respondent was correct in refusing to grant petitioner an exemption from income tax. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, in effect during the taxable years at issue. ↩
2. All references to "Rules" are to the Tax Court Rules of Practice and Procedure.↩
3. Submission of the administrative record for decision was preceded by a flurry of motions. On March 5, 1982, the parties filed with this Court a stipulation as to the administrative record. A motion for leave to amend this administrative record was then filed on March 24, 1982. Also on March 5, 1982, petitioner served on respondent a request for production of documents, which respondent declined to produce. Petitioner then filed a Motion to Compel Production of Documents on August 23, 1982. On September 1, 1982, respondent filed as a cross-motion, Motion for Order to Show Cause Why This Case Should Not Be Submitted On The Administrative Record as provided in Rule 217. Finally, on December 22, 1982, this Court denied all motions and ordered that the case "be submitted to the Court for Opinion and Declaration" pursuant to Rule 217.↩
4. Although the record states that Harold and Marjorie Holmes devote one hundred percent of their time to NCBC, its By-laws state that the head of the Church agrees as a matter of "religious duty" to use his occupation as a self-employed individual as a vehicle to carry out and put into effect the principles and creed of the church. The record does not disclose the occupation or income of any of the trustees or the amount of any contributions which they may have made to the petitioner.↩
5. This document was notarized in Ramsey County, Minnesota.↩
6. Those totals were also shown on Form 1023.↩
7. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation.-An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. * * * (c) List of Exempt Organizations.-The following organizations are referred to in subsection (a): * * * (3) Corporations * * * organized and operated exclusively for * * * charitable * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. ↩
8. Petitioner must comply with the statutorily mandated requirements to qualify for tax exemption regardless of the fact that it claims to be a "religious" organization, for exemption from tax is a privilege or matter of legislative grace rather than a right. Christian Echoes National Ministry, Inc. v. United States,470 F.2d 849, 857 (10th Cir. 1972), cert. denied 414 U.S. 864 (1973). Furthermore, the burden is upon the petitioner to demonstrate that respondent's determination is incorrect. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492↩ (1977); Rule 217(c)(2)(i).
9. We note that the "operated exclusively for exempt purposes", and the "private inurement" requirements often substantially overlap. Canada v. Commissioner,82 T.C. 973, 981↩ (1984).
10. NCBC has asserted that it cannot provide this information because it maintains no financial records. We note, however, that such practice is in direct contradiction with its stated By-laws.↩
1. This specific regulation is not at issue here. This case is cited by petitioner for its analysis of the principles of law contained therein.↩
2. Here because a federal statute is involved, the proper challenge would stem from Fifth Amendment↩ rights.