MAKE A JOYFUL NOISE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Make a Joyful Noise, Inc. v. Commissioner
Docket No. 37562-87X.
United States Tax Court
T.C. Memo 1989-4; 1989 Tax Ct. Memo LEXIS 5; 56 T.C.M. (CCH) 1003; T.C.M. (RIA) 89004; January 9, 1989. Fred R. Birdwell (president), for the petitioner. Roslyn D. Grand, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent revoked Make a Joyful Noise, Inc.'s (petitioner) qualification *6 as a tax exempt organization under section 501(c)(3). [1] Having exhausted its administrative remedies, petitioner is before this Court pursuant to section 7428 seeking a declaratory judgment as to the correctness of respondent's action. The issue for decision is whether petitioner operated exclusively for an exempt purpose within the meaning of section 501(c)(3). This case was submitted under Rule 122. The parties have filed a joint stipulation as to the correctness and completeness of the administrative record pursuant to Rule 217(b). The evidentiary facts and representations contained in the administrative record are presumed to be true for the purpose of this proceeding. Petitioner was incorporated on September 10, 1980, under the laws of Tennessee. Petitioner's purpose of organization, as set forth in its Charter of Incorporation, was as follows: Said corporation is organized exclusively for charitable purposes including the purchase, organization, and operation *7 of a camp for disadvantaged children and elderly citizens; accepting and soliciting donations for distribution to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code found in Title 26 of the United States Code; and to this end no part of the net earnings of this corporation shall inure to the benefit of any private shareholder, or individual * * * Petitioner's initial officers were Fred Birdwell, president and chairman of the board; Dolores Birdwell, secretary; and James Horton, vice president. James Horton resigned in April 1983. Fred Birdwell also served as petitioner's incorporator. On October 7, 1980, petitioner applied for exemption as an organization described in section 501(c)(3) by filing Form 1023 with the District Director of Atlanta, Georgia. A statement accompanying the application indicated that petitioner's fundraising activities would consist of conducting bingo games at two sites and that the funds generated from the games would be applied toward the ultimate purchase of the camp for disadvantaged children and the elderly and making distributions to other section 501(c)(3) organizations. *8 On March 11, 1981, respondent issued petitioner an advance determination letter granting it tax exempt status, effective September 1980 through September 30, 1982. Subsequent to petitioner's incorporation, the State of Tennessee passed legislation prohibiting the continued operations of bingo parlors that had not been in existence for at least 5 years. Pursuant to this legislation, petitioner's permit to conduct bingo games was revoked on August 2, 1982. From time to time after said revocation, petitioner leased certain premises which it made available to other organizations for the purpose of operating bingo games. Petitioner also agreed with these organizations to provide certain services in connection with the conduct of such games. The pertinent agreements are described below. Petitioner entered into an agreement on November 1, 1982, with Mid-South Entertainment, Inc. (Mid-South), whereby it agreed to lease the premises located at 3053 Brick Church Pike, Nashville, Tennessee (Brick Church Pike premises), from Mid-South for the sum of $ 2,000 per month. Bingo games were to be conducted on the premises. The lease was signed by Fred Birdwell on behalf of petitioner and by *9 James Horton on behalf of Mid-South. Mid-South's incorporators were James Horton and Fred Birdwell. Petitioner entered into the following agreements with respect to the use of the Brick Church Pike premises with the entities indicated: Amount to be
Paid to
Date
Entity
Term
Petitioner
1/10/83
Glaziers Local Union
1/10/83 -
40% of weekly
#1184 (Glaziers)  6/10/83
gross income
from bingo games
8/1/83
Nashville Building &
8/1/83 -
Payment schedule --
Construction Trade 3/31/84
amount depending
Council (Nashville) upon number of
bingo patrons
4/1/83
Glaziers
4/1/83 -
Payment schedule --
3/31/84
amount depending
upon number of
bingo patrons
Under the terms of the agreements bingo games were to be conducted on the Brick Church Pike premises. Petitioner's initial agreement with Glaziers provided: That M.J.N. [Make a Joyful Noise] shall have the right to decide the amount of prize money to be awarded, the type of games and game schedule, including but not limited to nights, times, and days for special or party night Bingo. * * * That M.J.N. shall be responsible for *10 all advertising and promotional work, including printing, relating to the Bingo operation. * * * Petitioner's contract with Nashville and its additional agreement with Glaziers provided that petitioner was to receive payments from the proceeds of bingo operations "in consideration of the support and assistance provided by M.J.N. [Make a Joyful Noise] for it's [sic] fund raising efforts." On September 1, 1983, petitioner entered into an agreement with Mid-South whereby it agreed to pay Mid-South $ 300 per month for the collection of all "contributions, donations, and or pledges" made by organizations conducting bingo operations at the Brick Church Pike premises. On March 1, 1983, petitioner entered into an agreement with the Veterans of Foreign Wars, Post 6993 (V.F.W.). The agreement provided that petitioner would receive "in consideration of the support and assistance provided by M.J.N. [Make a Joyful Noise] for its fund raising efforts, [V.F.W.] hereby agrees to pledge a voluntary charitable contribution to M.J.N. of Thirty percent (30%) of the weekly gross income derived from any and all bingo operations" conducted by the V.F.W. at 212 Main Street, Goodlettsville, *11 Tennessee. On March 1, 1984, petitioner entered into a lease agreement with the American Legion Post #17 whereby petitioner made available to the American Legion the premises located at 243 West Eastland Avenue, Gallatin, Tennessee. The property was to be used as a meeting and bingo hall. The agreement provided that petitioner would receive $ 1,500 per month as rent, totalling $ 18,000 per year. On March 1, 1983, petitioner and B & B Enterprises (B & B) entered into an agreement whereby petitioner agreed to lease from B & B certain premises which petitioner used as an office. The petitioner agreed to pay $ 300 per month as rent. The lease was signed by Dolores Birdwell on behalf of petitioner and by Fred Birdwell on behalf of B & B. Fred Birdwell was the sole proprietor of B & B. During its fiscal years ending September 30, 1983, and September 30, 1984, petitioner had receipts and expenditures as follows: [2]
9/30/83
9/30/84
Receipts from bingo game
participation  $ 135,649
[3] $ 68,565
Expenditures
135,103
81,740
*12 Included in expenditures were the following: 9/30/83
9/30/84
Total compensation to officers
and directors  $ 48,785
$ 42,800
a. Fred Birdwell, president 27,150
27,000
b. James Horton, vice president 15,135
--
c. Dolores Birdwell, secretary 6,500
15,800
Gifts and contributions
to organizations  [4] 6,208
[4] 1,575
Gifts, contributions, and
aid to individuals and  families  [4] 4,537
[4] 8,982
Petitioner has never operated a camp for disadvantaged youth or elderly citizens nor does the administrative record indicate that petitioner has made any significant progress toward implementing plans to achieve that objective. On January 7, 1986, respondent sent petitioner a copy of its Examination Report indicating its intent to make adjustment for petitioner's fiscal years ending September 30, 1983, and September 30, 1984. On August 27, 1987, respondent issued a final adverse determination letter which concluded that petitioner had "not operated exclusively for exempt purposes because the level of your exempt activities is not commensurate *13 with your resources and your primary activity, management and operation of bingo games for other exempt organizations, is a trade or business activity not qualifying as an exempt activity under section 501(c)(3) of the Code." The determination was for the year ending September 30, 1988, and the following years. In order for an organization to be exempt from Federal income taxes under sections 501(a) and 501(c)(3), it must satisfy both the organizational and operational test of sections 1.501(c)(3)-1(b) and 1.501(c)(3)-1(c), Income Tax Regs. If an organization fails to meet either test, it is not exempt. Section 1.501(c)(3)-1(a), Income Tax Regs. Respondent concedes that petitioner has at all times satisfied the organizational test; however, he contends that petitioner does not meet requirements of the operational test. Petitioner has the burden of proof that respondent's revocation is erroneous. Rule 217(c)(2)(i); P.L.L. Scholarship Fund v. Commissioner,82 T.C. 196, 199 (1984). We conclude that petitioner has not satisfied its burden. *14 Section 1.501(c)(3)-1(c)(1), Income Tax Regs., provides: (c) Operational test -- (1) Primary activities. An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. The word "exclusively" does not mean "solely" or "without exception." Church in Boston v. Commissioner,71 T.C. 102, 107 (1978). An organization which engages in nonexempt activities can obtain and maintain exempt status so long as such activities are only incidental and insubstantial. World Family Corp. v. Commissioner,81 T.C. 958, 963 (1983). Neither the Internal Revenue Code, the regulations nor the case law provide a general definition of "insubstantial" for purposes *15 of 501(c)(3). This is an issue of fact to be determined under the facts and circumstances of each particular case. World Family Corp. v Commissioner, supra at 967. Almost all of petitioner's receipts after the revocation of its bingo permit on August 2, 1982, were derived from its participation in arrangements with other organizations whereby it received a portion of the gross revenues generated from the bingo operations. The operation of regularly scheduled bingo games constitutes the operation of a trade or business, unrelated to an exempt purpose. P.L.L. Scholarship Fund v. Commissioner,82 T.C. at 199. The amount of petitioner's participation in the operation of bingo games for the other organizations was not insubstantial. Cf. Greater United Navajo Enterprises v. Commissioner,74 T.C. 69, 80 (1980), affd. by court order 672 F.2d 922 (9th Cir. 1981). Petitioner's attempt to characterize its participation in the bingo proceeds as donations or gifts is without merit. See Banner Building Co. v. Commissioner,46 B.T.A. 857, 864 (1942). Similarly, petitioner's position cannot be sustained *16 simply because the intended use of its net receipts was for exempt purposes. Greater United Navajo Enterprises v. Commissioner, supra at 81; Help the Children, Inc. v. Commissioner,28 T.C. 1128, 1130 (1957). Moreover, it is not without significance that petitioner has made almost imperceptible progress toward achieving its charitable goals. After review of the entire administrative record, see P.L.L. Scholarship Fund v. Commissioner,82 T.C. at 199, we conclude that petitioner has failed to carry its burden of proving that its participation in bingo games was an insubstantial part of its activities. One final word. Respondent on brief seeks to defend his determination on the ground that petitioner's net earnings inured to the benefit of private shareholders or individuals in violation of section 501(c)(3) and section 1.501(c)(3)-1(c)(2), Income Tax Regs. Although there is some indication in the administrative record that the inurement ground was involved in the proceedings leading up to the revocation, the fact is that respondent's determination was based entirely upon the exclusive operation *17 requirement of section 501(c)(3). Under these circumstances and in view of our conclusion that petitioner is in any event not entitled to exempt status, we decline to deal with the inurement issue. [5] See Gordon v. Commissioner,85 T.C. 309, 331 n.16 (1985). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The administrative record contains a variety of figures which cannot be fully reconciled. For the purpose of this proceeding, we have to a very large degree accepted the figures shown on petitioner's Forms 990. ↩
3. This figure is arrived at by taking the total figure of $ 67,312 shown for such receipts in the Form 990 and adding $ 1,253 which seems to have been omitted. The figure of $ 68,666 is shown as a total on page 1 of the Form 990; the $ 101 discrepancy cannot be explained.↩
4. The Forms 990 contain contradictory figures; we have utilized the larger figures.↩
5. We note that the burden of proof on the inurement issue would be upon respondent. Rule 217(c)(2)(ii).↩