NEW FAITH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
New Faith, Inc. v. Commissioner
Docket No. 42902-85X
United States Tax Court
T.C. Memo 1992-601; 1992 Tax Ct. Memo LEXIS 631; 64 T.C.M. (CCH) 1050; October 8, 1992, Filed *631 Decision will be entered for respondent. For Petitioner: Joseph Daniel Seckelman. For Respondent: William H. Quealy Jr.
FAY
FAY
MEMORANDUM OPINION FAY, Judge: In 1985, after examining the records and activities of New Faith, Inc., for the period ended December 31, 1982, respondent revoked petitioner's tax-exempt status for the tax year ended December 31, 1982, and all subsequent years. Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. [1]
This case was submitted for decision on the stipulated administrative record under Rule 122. The stipulated administrative *632 record is incorporated herein by this reference. The issue presented to us is whether petitioner is operated exclusively for charitable purposes within the meaning of section 501(c)(3). At the time of filing its petition herein, petitioner had its principal place of business in Bonita, California. Background
Petitioner is a nonprofit public benefit corporation organized under the laws of the State of California on January 30, 1981. Petitioner's articles of incorporation provide that petitioner's specific purpose is "to supply money, goods, and services for the poor." The articles of incorporation further declare that "This corporation is organized and operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code." On March 3, 1981, petitioner filed a Form 1023, Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code (application), with respondent's District Director in Los Angeles, California. In its application, petitioner represented that its "sole source of financial support will be its fund-raising activities" which petitioner described as "raffles, bingo and donations." In its *633 application, petitioner further described its charitable activities as follows: Essentially, the programs and activities of the corporation will be to supply money, goods and services to the poor. The corporation intends to keep a supply of such necessities as food and clothing in stock so that when a qualified person comes to New Faith he can be supplied with such necessities immediately. If a person needs a place to sleep, we want to be able to immediately provide a place to sleep. There will be no cost for these services. In this way the corporation hopes to provide immediate assistance to the poor without forcing them to spend money they either do not have or cannot afford to spend. Additionally, the corporation has as its goal the construction of a camp to house and care for poor people. The camp will not only house and feed these people, but provide an opportunity for these people to get on their feet and gain renewed confidence in themselves. At this time it is not possible to provide more details about the camp. Rev. Joseph is still exploring the possibilities of the camp and has made no firm decisions as to where it will be located, when it will be opened or *634 the details of its operations. The corporation also plans on conducting such "social" activities as picnics for the poor. Food would be provided free of charge. The key to any activity planned by the corporation would be its ability to immediately assist, without cost, the truly poor people.
Petitioner also represented in its application that there would be no cost for these services, and that services would be limited to persons with referrals from ministers or lawyers certifying the individual's need for assistance. On May 22, 1981, based on the information supplied in petitioner's application, respondent issued an advance letter ruling to petitioner recognizing it as an exempt organization. For the years at issue, petitioner's primary activity and source of income was the operation of several lunch trucks, which provided food items to the general public in exchange for scheduled "donations". Petitioner reported $ 114,080 in donations from this activity and expenses for food and produce of $ 96,642 on Form 990, Return of Organization Exempt from Income Tax, for the year ended December 31, 1982. Petitioner made a contribution in 1982 of $ 100 to the campaign fund of a candidate *635 who was running for Mayor of San Diego. Respondent conducted an examination of petitioner's activities for the period ended December 31, 1982, and on March 30, 1984, respondent advised petitioner that petitioner did not qualify as an exempt organization since petitioner's primary purpose or activity was determined to be the conduct of a trade or business. On September 3, 1985, following consideration of a protest filed by petitioner, respondent issued a final determination revoking petitioner's status as an exempt organization described under section 501(c)(3). The final adverse determination letter stated as grounds for revocation: The organization failed to meet the requirements of I.R.C. section 501(c)(3) and related Treasury Regulations, in that: 1) It was not operated exclusively for a tax-exempt purpose. 2) (a) A primary purpose of the organization was a trade or business (lunch truck) which constituted a substantial part of its operations, and (b) this business was carried on for profit, and was not in furtherance of nor related to the organization's tax exempt purposes. 3) The organization made a contribution to a political campaign on behalf of a local mayoral candidate. *636 4) The organization failed to keep records and books adequate to substantiate its purported charitable activities.
Discussion
Under section 501(c)(3), an organization which is organized and operated exclusively for an exempt purpose (and meets the other requirements of the provisions) qualifies as a tax-exempt organization. In order for an organization to be exempt from Federal income taxes under section 501(a) and (c)(3), it must satisfy both the organizational and operational tests of section 1.501(c)(3)-1(b) and (c), Income Tax Regs. If an organization fails to meet either test, it is not ex empt. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent, on brief, focuses her argument on petitioner's failure to satisfy the operational test. Petitioner has the burden of proving that respondent's adverse determination is erroneous. Greater United Navajo Enterprises, Inc. v. Commissioner, 74 T.C. 69, 76 (1980), affd. 672 F.2d 922 (9th Cir. 1981). Section 1.501(c)(3)-1(c)(1), Income Tax Regs., provides: (c) Operational test -- (1) Primary activities. An organization will be regarded as "operated exclusively" *637 for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. The word "exclusively" as used in section 501(c)3) does not mean "solely" or "without exception." Church in Boston v. Commissioner, 71 T.C. 102, 107 (1978). An organization which engages in nonexempt activities can obtain and maintain exempt status so long as such activities are only incidental and insubstantial. Manning Association v. Commissioner, 93 T.C. 596, 603-604 (1989). The purpose toward which an activity is directed, rather than the nature of the activity itself, determines whether the operational test is satisfied. The fact that an organization's activity constitutes a trade or business does not, in itself, disqualify that organization under section 501(c)(3). Junaluska Assembly Housing, Inc. v. Commissioner, 86 T.C. 1114, 1121 (1986); see also sec. 1.501(c)(3)-1(e)(1), Income Tax *638 Regs. The critical inquiry is whether petitioner's activity encompasses a substantial nonexempt purpose irrespective of the presence of other exempt purposes. This determination is a question of fact to be ascertained under the facts and circumstances of each individual case. See Manning Association v. Commissioner, supra.
Petitioner's main activity is the operation of a number of canteen-style lunch trucks. This type of activity is normally carried on by commercial profit-making enterprises. Petitioner's practice of collecting cash in exchange for food items is indistinguishable from the commercial activities of other for-profit commercial ventures engaged in the food retailing business. [2] The extent of petitioner's commercial activities is reflected in petitioner's Form 990 for 1982. During 1982, petitioner's commercial activity accounted for approximately 80 percent of its gross expenditures and nearly 100 percent of its gross revenues. It is incumbent on petitioner to show that this activity somehow furthered an enumerated exempt purpose. [3]
*639 Petitioner's sole argument, on brief, is that food items were routinely provided to needy travelers on California highways on a donation or "love offering" basis and that the needy traveler could determine what amount, if any, he could pay. We find, however, that the evidence stipulated in the administrative record does not support petitioner's argument. At the outset, we find no credible evidence in the record to support the position that food items were routinely offered to anybody for free or at below-cost prices. See Federation Pharmacy Services, Inc. v. Commissioner, 72 T.C. 687, 692 (1979), affd. 625 F.2d 804 (8th Cir. 1980). Furthermore, there is no evidence in the record showing that the people, if any, who received food items from petitioner for free or at below-cost prices were impoverished or needy persons. Petitioner provided no evidence that the alleged charitable activities were tailored to serve the poor, nor did petitioner limit its alleged assistance to those with referrals from ministers or lawyers, as was represented in petitioner's application filed with respondent. There is no reliable evidence in *640 the administrative record from which we could determine whether the number of fair market value exchanges was insubstantial. Furthermore, the administrative record does not support a finding that amounts received from the fair market value exchanges furthered any exempt purpose. In short, petitioner could not explain how its activity, essentially commercial in nature, furthered its charitable exempt purpose. See Greater United Navajo Enterprises, Inc. v. Commissioner, 74 T.C. 69 (1980). Petitioner's submission of a newspaper article that contains its founder's own statements relating to petitioner's activities does not substitute for specific documentation in the form of checks, invoices, receipts, contemporaneous journals, and other documentation necessary to substantiate petitioner's alleged charitable activities. Accordingly, based on all the evidence contained in the administrative record, we hold that petitioner has not carried its burden of proof in showing that petitioner's lunch trucks were operated exclusively in furtherance of one or more exempt purposes. [4]
*641 Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Sec. 7428↩ specifically confers jurisdiction on this Court to make a declaration with respect to the continuing qualification of certain tax-exempt organizations.
2. On brief, respondent alleges that petitioner posted prices for the different food items offered by the lunch trucks. Petitioner does not contest this claim. ↩
3. Exempt purposes include religious, charitable, scientific, literary, and educational, among others. Petitioner, on brief, characterizes its activities simply as charitable. The term "charitable" is used in sec. 501(c)(3) in its generally accepted legal sense. Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.↩ Although it would be impossible to list all purposes held to be charitable, the relief of poverty is certainly recognized as a charitable purpose.
4. In so holding, we need not reach respondent's alternative arguments for revocation of petitioner's tax-exempt status. We also want to make clear that our holding does not question the sincerity or motivation of petitioner or its founders in the operation of the lunch trucks at issue. We simply find that there is not enough evidence in the administrative record to enable us to conclude that petitioner has carried its burden of proof.↩